**Michael LITCHFIELD, By and Through Jeffrey LITCHFIELD, His Father and Next Friend, Plaintiff/Appellant,**

v.

**The MAY DEPARTMENT STORES COMPANY, Defendant/Respondent.**

No. 60793.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 1, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 7, 1993.

Application to Transfer Denied Feb. 23, 1993.

Burton M. Greenberg, St. Louis, for plaintiff/appellant.

Eugene K. Buckley, St. Louis, for defendant/respondent.

GRIMM, Judge.

In this jury-tried negligence case, plaintiff sought compensatory and punitive damages. Plaintiff, 5 years old at the time of this incident, was injured when a display bookcase or entertainment center, positioned on a 6–inch pedestal, fell on him at one of defendant's Venture stores. The incident occurred as plaintiff was attempting to open the doors of the display.

At the close of plaintiff's evidence, the trial court sustained defendant's motion for directed verdict on the claim for punitive damages. The jury awarded plaintiff $200,000 compensatory damages. Thereafter, upon plaintiff's request, defendant paid that sum.

Plaintiff appeals from the directed verdict on the punitive damages claim. Defendant counters with a motion to dismiss the appeal because plaintiff voluntarily accepted the benefits of the judgment.

We (1) deny defendant's motion to dismiss, and (2) hold the trial court did not err in directing the verdict on the punitive damages claim. The judgment is affirmed.

## I. Plaintiff's Right to Appeal

We first consider whether plaintiff waived his right to appeal the submissibility of punitive damages because he accepted payment of the compensatory damages judgment. Plaintiff contends that he may appeal "by virtue of the applicability of the separate, distinct and divisible judgment exception to the acceptance of benefits doctrine." We agree.

■ The general rule is that a party who has voluntarily and with knowledge of the material facts accepted the benefits of a judgment cannot thereafter appeal that judgment. *Deweese v. Investors Title Co., Inc.*, 792 S.W.2d 40, 42 (Mo.App.E.D.1990). One reason for this rule is to prevent a situation in which an appeal may lead to a result that shows that the appellant is not entitled to what he has received. J.E. Macy, Annotation, *Right of Appeal from Judgment or Decree as Affected by Acceptance of Benefit Thereunder*, 169 A.L.R. 985, 988 (1947).

■ However, an exception to the general rule allows for appeal where "reversing the judgment could not possibly affect the benefit which the appellant has accepted." *Helfrich v. Litke*, 765 S.W.2d 659, 660 (Mo.App.E.D.1989). Here, plaintiff accepted payment of the compensatory damages award. On appeal he does not contest the amount of compensatory damages or the issue of liability.

Further, defendant did not file an appeal. Thus the amount of the compensatory damages accepted by plaintiff is not directly in issue on appeal. *See, e.g., Warren v. Warren*, 601 S.W.2d 683, 687 (Mo.App.W.D. 1980) (money awarded to wife for support of child was not directly in issue because husband did not appeal and wife's appeal did not address it).

■ Nor is the amount of compensatory damages indirectly put at risk by an appeal of the punitive damages issue. The purpose of punitive damages is to punish and deter, not to compensate. *Smiley v. Cardin*, 655 S.W.2d 114, 117 (Mo.App.S.D. 1983). Thus, the amount of punitive damages need not bear any particular relation to the amount of compensatory damages. *Holcroft v. Missouri–Kansas–Texas R.R. Co.*, 607 S.W.2d 158, 163 (Mo.App.W.D. 1980). "Punitive damages are mere incidents to the cause of action and are considered separate and apart from and in addi-

tion to the assessment of [compensatory] damages." *Id.*

Further evidence of the independent and separable nature of punitive damages is found in our bifurcation statute.[1] Section 510.263[2] provides that "[a]ll actions tried before a jury involving punitive damages shall be conducted in a bifurcated trial before the same jury if requested by any party." Thus in the first stage of the trial the jury determines liability for and the amount of compensatory damages, and the liability of the defendant for punitive damages. § 510.263.2. In the second stage, the jury determines the amount of punitive damages. § 510.263.3.

■ The fact that defendant's conduct is an issue in the punitive damages inquiry does not defeat the separability of the punitive damages claim. In *Burnett v. Griffith*, 769 S.W.2d 780 (Mo. banc 1989), the necessity of using evidence of liability on the issue of punitive damages was held not a sufficient reason to require a new trial on all issues. *Id.* at 791. We find this conclusion applicable to the situation here of appealing solely the issue of punitive damages. The *Burnett* court wrote: "There was no error in the jury's finding of liability on the assault and battery count. We do not believe plaintiff must risk his verdict on that count to question the propriety of the trial court's ruling prohibiting the punitive damages submission." *Id.*

The general rule prohibiting appeal after acceptance of the benefits of a judgment is not applicable here. Plaintiff is not precluded from prosecuting his appeal of the trial court's refusal to submit the punitive damages issue to the jury. Defendant's motion to dismiss is denied.

## II. Submissibility of Punitive Damages

■ We turn now to plaintiff's allegation that the trial court erred in sustaining defendant's motion for directed verdict and overruling plaintiff's motion for new trial. He contends he "made a submissible case

on the issue of punitive damages." We disagree.

■ The "uniform tenor of the recent cases is that punitive damages are to be the exception rather than the rule, and that they are to be confined to cases in which the evidence supports the award. The phraseology differs in different kinds of cases, but all depend on willful wrongdoing, or recklessness which is the legal equivalent of willfulness." *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 75 (Mo. banc 1990).

■ Punitive damages can be awarded in a negligence action. *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc 1985). However, to support punitive damages in a negligence action, plaintiff must show conduct more egregious than that on which the claim of negligence is based. *Menaugh*, 799 S.W.2d at 74.

■ Thus, plaintiff must show (1) defendant knew or should have known, based on the surrounding circumstances that its conduct created a high degree of probability of injury, and (2) defendant showed complete indifference to, or conscious or reckless disregard for, the safety of others. MAI 10.02, 10.07 (1991); *Menaugh*, 799 S.W.2d at 74.

■ "In determining the issue of sufficiency of the evidence to support the submission of punitive damages, the evidence most favorable to the plaintiff's submission and all the inferences favorable to that submission are to be considered." *Smith v. Courter*, 575 S.W.2d 199, 207 (Mo.App. W.D.1978).

Plaintiff points to the following evidence. Two days before plaintiff was injured, another child had been hurt at the same store when a similar piece of display furniture fell on him. Defendant's manager directed an employee to secure the furniture, but this had not occurred prior to plaintiff's incident.

---

1. Before trial, plaintiff moved for a bifurcated trial on the measure of punitive damages, pursuant to § 510.263. The court indicated it would grant the motion if the issue of punitive damages was ultimately submitted. However, because the trial court sustained the motion for

directed verdict on that issue, it was not submitted to the jury.

2. All statutory references are to RSMo, Cum. Supp.1991, unless otherwise indicated.

Furniture was to be secured either by fastening it with wire to a pegboard or by bolting the legs to a platform by means of brackets. Both methods involved drilling holes in the furniture. As a result, display furniture was sold at half of its original price.

The defendant's store manager testified that unsecured display furniture was a constant problem. The problem was discussed at about 75% of the monthly safety committee meetings. Venture employees were required to inspect display furniture, ascertain whether or not the furniture was secured, and report their findings in store records.

When unsecured displays were observed, the maintenance man was ordered to secure them. The maintenance man testified that whenever he was told to secure furniture, he did so. However, he did not specifically recall securing the displays in response to the first incident or plaintiff's incident. And the store manager said that occasionally the maintenance man would not do things "right away."

Plaintiff appears to base his claim of punitive damages primarily on two things: (1) the occurrence of one similar incident occurred two days prior to plaintiff's incident, and (2) defendant's awareness of long-standing problems with display furniture and its failure to rectify them. The nature of these long-standing problems is not clear from the evidence. The only evidence of prior problems was the incident that occurred two days before plaintiff's incident.

Here, the evidence is insufficient to show that defendant knew or had reason to know that its conduct was "substantially likely" to cause physical harm. *See Hoover's Dairy, Inc.*, 700 S.W.2d at 435 (citing Restatement (Second) of Torts § 500 (1965)); *May v. AOG Holding Corp.*, 810 S.W.2d 655, 660 (Mo.App.S.D.1991) (requiring a "high degree of probability that the action would result in injury") (quoting *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. banc 1991)).

Further, the evidence indicates that defendant had a policy for addressing the safety problems posed by the display furniture. Although the existence of a policy for addressing safety issues may not itself be sufficient to insulate a defendant from liability for punitive damages, *see, e.g., Elliot v. Kesler*, 799 S.W.2d 97, 103–04 (Mo. App.W.D.1990), it is clear that defendant attempted to follow that policy. Here, defendant performed periodic inspections, and ordered that the displays be secured both as a general rule, and specifically in response to the incident prior to plaintiff's incident.

The failure to secure the display in question was not the result of complete indifference or conscious disregard. "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence." Restatement (Second) of Torts § 908 (1979). Point denied.

The judgment of the trial court is affirmed.

CRANDALL, P.J., and PUDLOWSKI, J., concur.