Minnie G. FRAZIER, Miky S. Frazier, Kevin L. Frazier, Jennifer S. Frazier, Christy D. Frazier, Lucas S. Frazier, Ashley N. Frazier, Dustin K. Frazier, Appellants,

v.

EMERSON ELECTRIC COMPANY, Respondent.

No. 63603.

Missouri Court of Appeals, Eastern District, Division One.

Dec. 28, 1993.

Paul J. Passanante, St. Louis, C.H. Parsons, Jr., Dexter, for appellants.

John L. Oliver, Cape Girardeau, K. Steven Jones, St. Louis, for respondent.

CRIST, Judge.

Plaintiffs, the wife and seven children of Donnie Frazier (Frazier), brought a wrongful death suit against Defendant after Frazier was fatally injured in an automobile accident with one of Defendant's trucks. At trial, the judge submitted the issue of Frazier's comparative fault to the jury. The jury returned a verdict finding Defendant to be 82.5% at fault and Frazier to be 17.5% at fault. It awarded total damages of $600,000, or $495,-000 to be paid by Defendant. Upon Plaintiffs' request, that amount was paid to them.

Plaintiffs appeal from the use of the comparative fault instruction, arguing insufficient evidence exists to support submitting that instruction to the jury. Defendant filed with this court a motion to dismiss Plaintiffs' appeal. Defendant contends Plaintiffs, by withdrawing the $495,000 judgment paid by Defendant, have voluntarily accepted the benefits of the judgment and are no longer entitled to appeal. We overrule Defendant's motion and affirm the trial court's judgment.

We first consider Defendant's motion to dismiss Plaintiffs' appeal. Defendant argues Plaintiffs waived their right to appeal by withdrawing the $495,000 judgment from the court. As a general rule, a party who voluntarily accepts the benefit of a judgment cannot thereafter prosecute an appeal to reverse that judgment. *Litchfield v. May Dept. Stores,* 845 S.W.2d 596, 598 [2] (Mo.App.1992). The rationale of this rule is to prevent a situation where the appeals court would find appellant was not entitled to an amount already received. *Id.*

Plaintiffs argue reversing the judgment could not possibly affect the benefit they have accepted, and thus it will not preclude their appeal. *See, Helfrich v. Litke,* 765 S.W.2d 659, 660 [1] (Mo.App.1989). Plaintiffs contend their challenge to the trial court's decision to submit a comparative fault instruction to the jury will not affect the $495,-000 partial judgment they have already accepted.

Defendant counters reversing the judgment would affect the benefit accepted by Plaintiffs. It argues if the trial court's decision is reversed, a remand for a new trial on both liability and damages is required. Thus, the judgment could affect the benefit Plaintiffs have already received.

Defendant relies upon *Barlett v. Kansas City Southern Ry. Co.,* 854 S.W.2d 396 (Mo. banc 1993). In *Barlett,* a negligence action, the Missouri Supreme Court reversed a judgment in favor of plaintiff, finding a lack of evidence of causation on one of the theories of negligence submitted to the jury. The Court then remanded for a new trial on the issues of both liability and damages. *Id.* at 403. In doing so, the Court stated: "Especially in a comparative fault case, a determination of damages cannot survive independent of the accompanying determination of liability. Because the finding on liability is reversed, the finding on damages must also be reversed." *Id.*

Defendant misconstrues *Barlett. Barlett* merely requires a new trial on damages must also be ordered if a new trial on the issue of liability is ordered. *Id.* It would not require this court to order a new trial on the issue of damages and liability where neither Plaintiffs nor Defendant directly challenge both issues. In *Barlett,* the defendant challenged the jury's apportionment of fault as unsupported by the evidence. The question here is whether the trial court should have even given that instruction. The only issue on appeal is whether the award of Plaintiffs will be increased. Defendant has conceded it owes at least $495,000 by paying that amount into the court registry and failing to appeal. Therefore, our decision here will not affect the benefit accepted by Plaintiffs.

Also significant is Plaintiffs' statement in their motion to withdraw the funds paid by Defendant:

Plaintiffs respectfully state that this motion shall in no way be construed as an admission by them that $495,000.00 is the total amount due them. Plaintiffs state specifically that the total amount due them is the total damages determined by the jury, and Plaintiffs do not intend to forego their right to appeal by withdrawing the funds paid into the Court's registry in partial satisfaction of any final judgment entered against Defendant.

This reservation of Plaintiffs' rights is also a factor to be considered in determining whether they forfeited their right to appeal. *See, Brisco v. Brisco,* 713 S.W.2d 586, 591 [5] (Mo.App.1986). Motion overruled.

■ We now consider Plaintiffs' challenge to the comparative fault instruction, patterned after MAI No. 17.04, as not supported by the record. Instruction No. 8 provided:

In your verdict you must assess a percentage of fault to decedent Donnie Frazier whether or not Allen Hilliard was partly at fault, if you believe:

First, either:

Decedent Donnie Frazier knew, or by the highest degree of care could have known that there was a reasonable likelihood of collision in time thereafter to have stopped, or swerved, but decedent Donnie Frazier failed to do so, and

Second, decedent Donnie Frazier, in any one or more of the respects submitted in paragraph First, was thereby negligent, and

Third, such negligence of decedent Donnie Frazier directly caused or directly contributed to cause the death of Donnie Frazier.

■ Each element of the instruction must be supported by substantial evidence for it to be properly submitted. *Knox v. Simmons,* 838 S.W.2d 21, 24 [9] (Mo.App. 1992). In reviewing the record, an appellate court must examine the evidence in the light most favorable to submission of the instruction. *Oldaker v. Peters,* 817 S.W.2d 245, 251 [8] (Mo. banc 1991).

■ The giving of the above instruction is appropriate only where the evidence shows Frazier had sufficient time, distance, means and ability, considering the movement and speeds of the vehicles, to stop or swerve to avoid the collision but failed to do so. *See, Knox,* 838 S.W.2d at 25; *Gardner v. Reynolds,* 775 S.W.2d 173, 178 [8, 9] (Mo.App. 1989). It has been held a driver has time to swerve if he also has time to stop. *Ethridge v. Gallagher,* 773 S.W.2d 207, 212 (Mo.App. 1989).

The accident occurred on Highway 53, a two-lane highway, near Campbell, Missouri at approximately 6:30 a.m. The driver of the tractor-trailer, Allen Hilliard, testified he was southbound when he observed an automobile headed northbound begin to pass another automobile in his lane. To avoid a collision, Hilliard drove off the road and onto the shoulder. When Hilliard attempted to bring the tractor-trailer, which was carrying a full load, back onto the roadway, it jack-knifed. Hilliard lost control and the tractor-trailer continued across the northbound lane of traffic and came to rest on the opposite side when it hit an embankment. Hilliard stated he observed northbound headlights at that time, but they were some distance away. At some point in time, Frazier's northbound van crashed into the tractor-trailer killing both Frazier and a passenger.

A major controversy at trial was exactly when the van collided with the tractor-trailer. However, Hilliard specifically testified the van did not collide with him until after he came to a complete stop against the embankment. According to Defendant's expert, Hilliard's entire maneuver until he came to a complete stop took eight seconds. The expert further testified the time interval from the time of Hilliard's re-entry to the road and when he came to rest was five seconds. Of that five seconds, it took less than one second for the tractor-trailer to cross the centerline of the highway.

The officer who investigated the accident testified no physical evidence, such as skid marks, was present to indicate Frazier ever attempted to stop or swerve. The officer further stated he believed the van was travelling at 50 miles per hour when it struck the

tractor-trailer. A vehicle travelling 50 mph is travelling 73.33 feet per second [ (5280 feet/mile × 50 miles/hour)/3600 seconds/hour) ]. In five seconds, the vehicle will travel 366.65 feet (73.33 feet/second × 5 seconds). Allowing a reaction time of three-quarters a second and further assuming it took Hilliard a full second before he crossed the centerline, the evidence indicates Frazier travelled 238.32 feet (73.33 feet/second × 3.25 seconds) before hitting the tractor trailer. The officer testified a vehicle travelling at 50 mph can stop in 232 feet.

In addition, evidence was presented the area in question is a flat level stretch of highway. Defendant's expert testified the headlights of the tractor-trailer would be bumping up and down and then sweeping at angles. He stated this action would be apparent to an oncoming driver, even in the dark, and should have presented some concern. In that case, Frazier had nearly a full eight seconds to take action, and after allowing for his reaction time, he travelled 531.64 feet (7.25 seconds × 73.33 feet/second) before colliding with the tractor-trailer. Sufficient evidence exists in the record to show Frazier could have stopped or swerved to warrant submitting a comparative fault instruction to the jury.

Judgment affirmed.

CRANDALL, P.J., and REINHARD, J., concur.