In re the MARRIAGE OF Lisa Ann MILLER and Douglas Paul Miller.

Lisa Ann MILLER, Appellant,

v.

Douglas Paul MILLER, Respondent.

No. 18680.

Missouri Court of Appeals, Southern District, Division Two.

May 23, 1994.

Dale E. Gerecke, Finch, Bradshaw, Strom & Steele, Cape Girardeau, for appellant.

John P. Heisserer, Kevin L. Wibbenmeyer, Richey, Rice, Spaeth, Heisserer & Summers, Cape Girardeau, for respondent.

CROW, Judge.

Lisa Ann Miller ("Lisa")[1] brings this appeal from a decree dissolving her marriage to Douglas Paul Miller ("Douglas"). Lisa maintains the trial court erred in determining custody of the parties' children and dividing the marital property.

The parties married August 25, 1979. There are two children of the marriage: Ashley Ann Miller, born May 20, 1983, and Derek Paul Miller, born February 23, 1986. Lisa alleged, and testified, that the parties separated on October 23, 1992. The trial court so found.

The decree awarded Douglas "[p]rimary care, custody and control" of both children, but granted Lisa "visitation and temporary custody" on "the first three weekends of each month from Friday at 6:00 p.m. until Sunday at 6:00 p.m." Additionally, the decree granted Lisa "visitation and temporary custody" (a) on certain designated holidays in even numbered years, (b) on other designated holidays in odd numbered years, (c) during certain designated days of the Christmas season in even numbered years, and (d) during other designated days of the Christmas season in odd numbered years. Finally, the decree granted Lisa "visitation and temporary custody" for three two-week periods "during the summer months."

The first of Lisa's two points relied on reads:

"The trial court erred in taking the parties' children away from Lisa and awarding their custody to Doug because such a decision is not supported by substantial evidence, is against the weight of the evidence and erroneously applies the law in that Lisa had been the primary caretaker of the children and had been the primary influence in the childrens' [sic] lives and their best interests would be served by their custody being awarded to Lisa."

This Court has characterized a physical custody arrangement similar to the one here as "joint physical custody" as defined by § 452.375.1(2), RSMo Cum.Supp.1990. *In re Marriage of Johnson*, 865 S.W.2d 412, 415[1] (Mo.App.S.D.1993). That version of § 452.-375 was in effect at the time the trial court entered the decree here. We shall therefore treat Lisa's first point as a contention that the trial court erred in its apportionment of joint physical custody in that the periods of time during which the children will reside with Douglas are too long and too frequent,

1. For brevity and clarity, we refer to the parties by their respective first names.

while the periods of time during which the children will reside with her are too short and too infrequent.

■ The standard of appellate review in Rule 73.01(c), Missouri Rules of Civil Procedure (1994), as construed by *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), applies to decrees of dissolution of marriage. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989). The decree will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* This standard applies to custody determinations. *Id.*

■ Lisa begins her argument by asserting the custody determination appears to be an effort by the trial court to punish her. During her testimony, Lisa admitted an incident in December, 1991, when Douglas entered the home and encountered her and a male co-worker, K——, nude in a bedroom. There was also testimony by Douglas about a telephone conversation he overheard between Lisa and another male co-worker, B——. According to Douglas, Lisa and B—— were talking about "[h]ow much they loved each other." Douglas added that he found out Lisa gave B—— a key chain saying, "I love you, [B——]."

■ Lisa correctly points out that a custody award is not to be used as punishment of a parent, but must be based upon the best interests of the children. *Petty v. Petty*, 760 S.W.2d 555, 557[5] (Mo.App.W.D.1988). Lisa concedes morals are a factor to consider in determining custody, but insists sexual misconduct is insufficient to deprive a parent of custody.

We find nothing in the record to substantiate Lisa's hypothesis that the trial court based the custody determination on the evidence of her amorous activities with K—— and B——.

When the parties separated, Lisa moved from Scott City to Chaffee. Douglas remained in the marital home at Scott City, where the children attend school. Lisa testified she had thought about transferring the children to a Chaffee school. However, Lisa

acknowledged the children were doing "remarkably well" in their present school, being "A" and "B" students.

Both parties are employed. Lisa has worked for her employer since 1979. Douglas has worked for his employer "several years."

At time of trial, Lisa was living in a two-bedroom duplex. The marital home, which the trial court awarded to Douglas, has three bedrooms, two bathrooms, a living room, kitchen and dining room. Douglas testified both children enjoy living there. He explained, "They each got their own room and got a pool in the backyard." He added that his parents and two sisters live nearby and "help out" with the children.

Lisa acknowledged that on one occasion (inferably in 1990) she and several co-workers, including K——, spent a month in Texas in connection with their employment. While on that assignment, they spent time at the hotel pool and went dancing "as a group." Douglas took care of the children during that time.

Douglas testified he helps the children with their homework, that he was a "T-ball" coach for Derek and 13 other children, and that Ashley and Derek have friends in their present school and neighborhood.

The General Assembly has declared it is the public policy of Missouri to assure children frequent and meaningful contact with both parents after the parents have dissolved their marriage. § 452.375.3, RSMo Cum. Supp.1992. The joint physical custody plan here is consistent with that policy.

■ An appellate court will not disturb a trial court's custody determination unless it is manifestly erroneous and the welfare of the children requires a different disposition than that made by the trial court. *In re Marriage of Douglas*, 870 S.W.2d 466, 469[3] (Mo.App.S.D.1994); *Ibrahim v. Ibrahim*, 825 S.W.2d 391, 397[7] (Mo.App.S.D.1992); *In re Marriage of Goostree*, 790 S.W.2d 266, 267 (Mo.App.S.D.1990).

Having carefully considered the testimony in the relatively short (65–page) transcript, we hold the trial court's joint physical custody plan is not manifestly erroneous and the

welfare of the children requires no different disposition. Lisa's first point is denied.

Lisa's second point asserts the trial court, in dividing the marital property, erroneously awarded Douglas a disproportionately large share.

The decree divides the marital property item-by-item and orders Douglas to pay Lisa $5,000 cash. Lisa's position, as set forth in her brief, is:

> "... Lisa would admit that the actual division of all of the assets is supported by the evidence. However, Lisa's complaint is with the fact that Doug was ordered to pay her only $5,000."

Lisa argues that for there to be an equal division of the marital property, Douglas should pay her $24,248.

■ Douglas points out that on March 25, 1993, a few days after filing her notice of appeal, Lisa filed a "Satisfaction of Judgment" in the trial court, acknowledging "full and complete satisfaction" of the $5,000 award.[2] Citing *In re Marriage of Vinson*, 839 S.W.2d 38 (Mo.App.S.D.1992), Douglas maintains Lisa is thereby barred from seeking a greater sum on appeal.

The facts here are indistinguishable from those in *Vinson*. There, we analyzed the pertinent appellate decisions and held that by acknowledging satisfaction in full of the amount awarded by the trial court to equalize the division of marital property in a dissolution action, the appellant was foreclosed from attacking the division of marital property on appeal. 839 S.W.2d at 39–42.

We are mindful that since *Vinson*, the Eastern District of this Court has decided *Frazier v. Emerson Electric Co.*, 867 S.W.2d 700 (Mo.App.E.D.1993), holding that appellants who accepted the amount of a judgment in a wrongful death action were not barred from asserting on appeal that the trial court erred in giving a comparative fault instruction. There, the damages assessed by the jury, $600,000, were reduced to $495,000 in the judgment because the jury found the decedent 17.5 percent at fault. *Id.* at 701. In accepting the amount of the judgment in *Frazier*, the appellants specified they were not admitting it was all they were due. *Id.* at 702. They specifically declared they were entitled to the full amount set by the jury and did not intend to forego their right to appeal. *Id.*

No such proviso appears here. Consistent with *Vinson* and the cases on which it relies, we hold Lisa's second point is ineligible for review.

The decree of dissolution of marriage is affirmed.

FLANIGAN, P.J., and PREWITT, J., concur.

---

**2.** The lawyer representing Lisa in this appeal did not represent her when the "Satisfaction of Judgment" was executed and filed.