Patricia L. BOYD, Respondent,

v.

Charles C. WIMES, et al., Appellants.

No. WD 34214.

Missouri Court of Appeals,
Western District.

Jan. 10, 1984.

Martin Anderson, Kansas City, for appellants.

Stephen G. Scholl, Steven B. Farabi, Kansas City, for respondent.

Before SOMERVILLE, P.J., and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

Plaintiff Patricia Boyd sued Mid-Central Mortgage and Investment Company, Inc. ("Mid-Central") and Charles Wimes, individually as statutory trustee of Mid-Central, for fraudulent misrepresentation and conversion. The jury found in favor of Wimes but against the corporation on the fraudulent misrepresentation count, and found against both defendants on the conversion count, awarding actual damages of $305.56 and $5,000 in punitive damages. Only Wimes, as an individual, appeals.

Viewed in a light most favorable to the plaintiff, the following facts occurred. In early 1976, Boyd's realtor referred her to Mid-Central for the purpose of filling out a loan application to finance the purchase of a home in Kansas City, Missouri. Boyd had entered into a contract to purchase the home in April, 1976, and closed the transaction in June, 1976. During this period, Boyd came to Mid-Central's business offices twice and spoke with Wimes on the telephone several times concerning her loan application. Unknown to plaintiff, due to financial difficulties the decision had been made before May of 1976 to wind down and liquidate Mid-Central's business. In addition, Mid-Central had received notice in 1975 that its assets were less than those necessary to maintain FHA approval status, and eventually lost that status in May,

1976. None of this was disclosed to plaintiff, although Mid-Central approved her loan application sometime before closing on her home.

For 21 consecutive months beginning in July, 1976, plaintiff made monthly house payments to Mid-Central of $182. From each of the 21 payments, an amount of $41.76 was identified as a "special account" to be held for the payment by Mid-Central of taxes, hazard insurance, and FHA mortgage insurance on behalf of Boyd.[1]

Mid-Central failed to make all of the payments on Boyd's behalf. Its mortgage loan ledger revealed that out of the $876.96 total paid into Boyd's escrow account, only two disbursements totaling $281 were actually made. Plaintiff also learned that Mid-Central, contrary to its agreement, failed to pay off the deed of trust through James B. Nutter & Company carried by the sellers from whom plaintiff purchased her property. This first deed of trust was foreclosed in September, 1978. Boyd obtained new financing to pay off the first mortgage but before regaining her property was required to pay an additional $306.56 representing the 1978 taxes on her home.

Defendant Wimes served as corporate officer, including president, from 1969 until the forfeiture of Mid-Central's charter sometime in September, 1976. He continued as statutory trustee during the period Mid-Central was winding down its business affairs. Except for isolated instances of hiring bookkeepers to update the corporate records, Wimes was the only employee and staff member, and kept all books of account of the defunct corporation from 1976–78.

Point I claims error in the trial court's refusal to dismiss plaintiff's conversion

---

1. Plaintiff's Exhibit No. 3, a copy of the form notice sent to borrowers, reads as follows:

    A portion of your monthly payment is made up of funds for payment of Real Estate Taxes and Insurance Premiums. This money is held in a special account for you and is used only for payment of taxes and insurance. You will receive an annual statement as to total taxes and interest paid, and in the event of an increase in taxes or insurance premiums, you will be notified of the resulting change in your monthly payment. If you should receive any bills for Real Estate Taxes or Hazard Insurance premiums, please send them to us for payment.

count as it relates to Charles Wimes as an individual. Wimes argues all of his actions arose only in his capacity as corporate officer and in the scope of his employment with Mid-Central, and that none of the money received from Boyd was converted to his individual benefit. He therefore concludes that no personal liability for conversion can result.

Merely holding a corporate office will not subject one to personal liability for the misdeeds of the corporation. At the same time, however, the corporate office does not insulate against liability one who has actual or constructive knowledge of the actionable wrong and who participates therein. *Osterberger v. Hites Construction Co.,* 599 S.W.2d 221, 229 (Mo.App.1980). As pointed out in *Rauch v. Brunswig,* 155 Mo. App. 367, 137 S.W. 67 (1911), were the rule to the contrary, "the agent of a corporation could shield himself from liability for almost every kind of wrong, provided he was acting in the capacity of agent ... [T]he agent is liable to a third party for misfeasance and for acts of positive wrong." 137 S.W. at 68.

Here, Wimes acted as the sole statutory trustee and only employee of the defunct Mid-Central for the period in which plaintiff deposited money into the escrow fund. Even in the "isolated instances" where outside bookkeepers were hired for record-keeping services, full responsibility for the management of corporate funds rested solely with Wimes. *See Rauch v. Brunswig, supra.* The jury could reasonably infer Wimes participated in the actual transfer of funds from the company accounts, including plaintiff's. Wimes himself was aware of the specific purpose for which the earmarked funds were intended to be applied. Company records and the fact plaintiff was forced to update payment of her 1978 taxes before regaining her home after foreclosure of the first deed of trust demonstrated that the earmarked funds were diverted into channels other than as intended. The plaintiff was not required to prove the specific channels the funds traveled nor, as defendant argues, Wimes' personal use of the funds, since the essence of the tort of conversion lies not in the wrongful acquisition by the wrongdoer but rather in misappropriation by the holder. *See Price v. Ford Motor Credit Co.,* 530 S.W.2d 249, 255 (Mo.App.1975); *McCullough v. Beatty Oil Co.,* 444 S.W.2d 53 (Mo.App. 1969).

*Darling & Co. v. Fry,* 24 S.W.2d 722 (Mo.App.1930), cited by defendant can be distinguished from the instant case. There the managing officer was held not personally liable for the conversion of money received from the sale of consigned fertilizer. The court reasoned the defendant was not the managing officer when the consignment contract was executed nor was any copy of the contract kept within company files. Unlike *Darling,* in the instant case the jury could reasonably infer knowledge of the converted funds from the fact Wimes stood as the sole employee and trustee of Mid-Central during the period in question. Similarly, Wimes' reliance upon *Waiters' Benevolent Association v. Cella,* 223 S.W. 444 (Mo.App.1920) is misplaced. In addition to the facts being different, the cause of action in *Waiters'* was for money had and received as opposed to a submitted theory here for conversion. Sufficient evidence of Wimes' knowledge and participation in the misappropriation of Boyd's escrow funds existed to base a finding of personal liability, and Point I is ruled against him.

Wimes' second point appears to challenge plaintiff's verdict director without developing any specific complaints, while wandering back into the argument raised in Point I regarding Wimes' personal liability. Instruction No. 14 stated:

Your verdict must be for plaintiff on her claim for conversion against Defendant Charles Wimes if you believe:

First, plaintiff paid money to Mid-Central Mortgage and Investment Company, Inc., to be held in escrow for payment of 1978 real estate taxes on her home at 6441 South Benton, and

Second, Defendant Charles Wimes did not use the money paid in escrow to pay

the 1978 real estate taxes on plaintiff's home at 6441 South Benton, and

Third, plaintiff was thereby damaged. The instruction sufficiently hypothesized the facts necessary to prove conversion against Wimes. While ordinarily money represented by a general debt cannot be the subject of conversion, an exception is recognized for misappropriated funds placed in the custody of another for a definite application. *See Dillard v. Payne,* 615 S.W.2d 53 (Mo.1981). Point II is ruled against defendant.

Point III assumes a successful challenge to the verdict director and argues no basis for an award of punitive damages thereby existed. Because of the disposition of Point II, Point III is also ruled against defendant.

The judgment is affirmed.

All concur.