Pete D. STAVRIDES,
Plaintiff/Respondent,

v.

Frank L. ZERJAV, individually and as general partner of Pinecrest Partners, Ltd., Defendant/Appellant,

and

Pinecrest Partners Ltd., Defendant,

and

Peoples Bank of Bloomington, an Illinois Corporation, Defendant.

No. 67906.

Missouri Court of Appeals,
Eastern District,
Division Five.

June 25, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1996.

Application to Transfer Denied
Sept. 17, 1996.

William James O'Herin, Florissant, for appellant.

Robert D. Arb, Arb & Martin, Valley Park, for respondent.

CRANE, Chief Judge.

Plaintiff, Pete D. Stavrides, filed an action against defendant, Frank L. Zerjav, general partner of Pinecrest Partners, Ltd. ("Pinecrest Partners"), individually and in his capacity as general partner of Pinecrest Partners, for damages for intentional conversion of Stavrides' final payment of $16,920.00 on a promissory note.[1] The trial court entered judgment on a jury verdict in favor of Stavrides for $30,000.00. Zerjav appeals. We affirm.

---

1. The trial court dismissed Peoples Bank of Bloomington for lack of personal jurisdiction. *Stavrides v. Zerjav*, 848 S.W.2d 523 (Mo.App. 1993). On October 12, 1994 Stavrides voluntarily dismissed without prejudice Count VIII, which named Pinecrest Partners as a defendant.

Pinecrest Partners was a limited partnership formed by Zerjav and others to invest in another limited partnership by the name of Pinecrest Associates, Ltd. ("Pinecrest Associates"). Both partnerships were organized on July 29, 1983 with Zerjav as a general partner of both. At the time these partnerships were organized, Equity Assets, Inc. was a co-corporate general partner. In early 1986 Zerjav became the sole general partner of each partnership.

On July 30, 1983 Pinecrest Associates entered into an agreement, entitled "Agreement For Warranty Deed—Deed In Escrow," to purchase an apartment complex in Normal, Illinois from Ralph and Elsa Endress. The agreement provided that the purchase price of $5,340,000.00 was to be paid by delivery of a promissory note from Pinecrest Associates for $990,000.00 payable to Mr. and Mrs. Endress and a wrap-around mortgage for $4,350,000.00. This agreement further provided that the $990,000.00 promissory note was to be secured by an assignment of Pinecrest Partners limited partners' capital in the amount of $560,000.00. The $990,000.00 promissory note was to contain a payment schedule showing an initial payment of $125,000.00 to be made on October 15, 1983, a payment of $40,000.00 on April 15, 1984, and additional periodic payments through July 15, 1993.

Also on July 30, 1983 Pinecrest Partners, by Zerjav, and Mr. and Mrs. Endress entered into an agreement entitled Assignment of Notes and Security Agreement. By this agreement Pinecrest Partners agreed to assign its limited partners' promissory notes in the amount of $572,700.00 "as available commencing with the sale of Limited Partnership interests on or about October 15, 1983." The Assignment also provided:

3. That such assigned notes may be pledged or hypothecated to a bank or financial institution, after bonding by a security bonding company acceptable to Assignee, that the Assignor will assist in obtaining.

. . . .

5. That such cash proceeds that are raised by such pledging or hypothecating of the Promissory Note shall be used *only* for the amortization and satisfaction of the Promissory Note, an executed copy of which is attached hereto as Exhibit A.

6. If cash proceeds from such security financing is raised and applied to the Note for $990,000, such amortization shall be regarded as payment in place of the scheduled principal and interest payments, thereby deferring additional payments until such scheduled amounts are again due and owing.

Zerjav was Stavrides' accountant from 1981 to 1988. In 1983 Zerjav suggested to Stavrides that he invest in Pinecrest Partners. Stavrides invested $110,400.00 to purchase four equity units in Pinecrest Partners by paying approximately 10% in cash and making a series of promissory notes to Pinecrest Partners dated September 30, 1983 for varying amounts and maturities. The first payment was due on March 1, 1984 and the last payment of $16,920.00 was due on March 1, 1987. The promissory notes bore language indicating that Pinecrest Partners would assign the notes as security for one or more bank loans to Pinecrest Partners. The notes further provided that Stavrides agreed to make payments to a bank if the bank so directed.

At the time Stavrides executed the promissory notes, he also signed an Indemnification and Pledge Agreement with Integrity Insurance Company, as surety, in consideration of its issuance of an Investor Financial Surety Bond. The indemnity agreement provided that Integrity was required to make payment to the lender if Stavrides defaulted on his payments on the promissory notes whether or not Stavrides had any defenses under the note or otherwise against the partnership, general partner, lender, or any other party. It required Stavrides to indemnify Integrity for any amount Integrity was required to pay under the bond as well as costs and expenses. Stavrides also agreed to submit to the jurisdiction of the New Jersey courts.

Pinecrest Associates made the first two scheduled payments on the $990,000.00 promissory note as follows: $125,000.00 in October, 1983 and $40,000.00 in March, 1984. On August 6, 1984 Pinecrest Partners as-

signed all of its limited partners' promissory notes due March 1, 1985, March 1, 1986, and March 1, 1987, including Stavrides' notes, to Mr. and Mrs. Endress. Zerjav executed the assignment as general partner of Pinecrest Partners. Mr. and Mrs. Endress assigned and physically delivered these notes to their lender, Bloomington Federal Savings & Loan (later Champion Federal), as collateral for a loan to them.

Stavrides received from Zerjav a Supplement dated October 1, 1984 to the limited partnership agreement advising that in the next few weeks he might be notified that all of his unpaid capital promissory notes to Pinecrest Partners had been pledged and that a financing institution would thereafter collect the payments directly from Stavrides.

The Pinecrest Partners limited partners' promissory notes, aggregating $528,000.00, were transferred to Peoples Bank of Bloomington as escrow agent for Bloomington Federal by Escrow Agreement dated October 11, 1984 between Peoples Bank, Pinecrest Associates, Mr. and Mrs. Endress, and Bloomington Federal. Pursuant to the Escrow Agreement, Pinecrest Associates agreed that the limited partners' note payments on each respective due date should first be made to Peoples. Peoples agreed to pay to Bloomington Federal for Mr. and Mrs. Endress' benefit the proceeds from the notes or the surety bond the following amounts: $219,840.00—March 1, 1985; $172,800.00—March 1, 1986; and $135,360.00—March 1, 1987. Peoples also agreed to pay to Pinecrest Partners any and all amounts collected in excess of these amounts on the respective payment dates. Under the July 30, 1983 Assignment of Notes and Security Agreement the application of the proceeds from these notes to the $990,000.00 promissory note substituted for and deferred further scheduled payments on the $990,000.00 note.

On November 12, 1984 Stavrides received a letter from Zerjav indicating that Pinecrest Partners had endorsed the promissory notes and assigned its security interest in the units held by Stavrides. On February 15, 1985 Peoples wrote to Stavrides advising him that his note for capital contribution had been assigned to Peoples as Trustee and his pay-

ments beginning with the one due March 1, 1985 should be sent to Peoples and that if he had any questions he should contact Zerjav. A similar notice was sent in 1986.

In making payments on the promissory notes due in 1985 and 1986 after the Assignment to Peoples, Stavrides made the checks payable to "Pinecrest Associates Limited Partnership." Peoples' records show that it received those payments. By letter dated February 4, 1987, Peoples sent a notice to Stavrides directing him to send his 1987 note payment to Peoples. It also bore the direction: "In the event you have any questions, please don't hesitate to contact the General Partner of the Partnership."

On February 10, 1987, Zerjav notified Stavrides that his 1987 payment, which Zerjav characterized as the "final payment under recourse notes," was to be forwarded directly to Pinecrest Partners' offices in St. Louis and enclosed a self-addressed stamped envelope for that purpose. On February 16, 1987 Stavrides wrote checks totalling $16,920.00 to Pinecrest Partners which Zerjav subsequently endorsed to "RVML Project 5100." Stavrides testified that he sent the payment to Zerjav because of Zerjav's letter instructing him to do so and Peoples' direction to contact Zerjav if he had any questions.

Zerjav advised the other limited partners to send their 1987 note payments to Pinecrest Partners. As a result, Peoples did not receive $126,900.00 of the $135,360.00 in payments due March 1, 1987.

On March 17, 1987 Champion Federal (formerly Bloomington Federal) advised Zerjav by letter that Peoples had received only two payments on the promissory notes due March 1, 1987 and that it intended to enforce collection on the remainder of $148,500.00 still due on the 1986 and 1987 notes. It wrote: "If you have directed the investors [limited partners] to make the payments to your office, such direction is in contradiction of the rights of Champion Federal and in violation of the provisions of the escrow." On March 27, 1987 Champion Federal notified Stavrides that his payment due March 1, 1987 to Peoples was delinquent and advised

him that collection proceedings would be instituted if payment was not made by April 15.

Stavrides contacted Zerjav who advised him that the Champion Federal letter was a mistake and not to worry about it. On April 8, 1987 Zerjav wrote Stavrides advising him his notes had been paid in full and that "as a result of incomplete reconciliations of your payment to the offices of the Partnership, a notice was mailed in error from a third-party lender." It further stated: "DISREGARD ANY SUCH NOTICE FOR FURTHER NOTE PAYMENTS; YOUR ACCOUNT HAS BEEN CREDITED WITH PAYMENT IN FULL."

On January 17, 1989 Integrity Insurance in Liquidation in New Jersey advised Stavrides by mail that it had been notified by Peoples that he was in default and demanded payment within seven days. It further advised that the lender had filed a claim against the surety bond and that, if payment was not made, Stavrides would be liable under his indemnification agreement with Integrity to reimburse Integrity for liability including interest, attorney's fees and costs of collection as well as the payment amount. On January 30, 1990 an action was filed against Stavrides in New Jersey on behalf of Integrity. Stavrides subsequently settled this action for $16,920.00. In defending the action Stavrides incurred over $5,000.00 in attorney's fees.

Stavrides filed this action against Zerjav for actual and punitive damages. At trial, Zerjav denied converting the 1987 funds, and defended on the theory that payments on all limited partners' 1987 notes should have been made to Pinecrest Partners because by 1987 the payments collected by Mr. and Mrs. Endress exceeded the $560,000.00 portion of the note secured by the limited partners' notes. He claimed that the $125,000.00 and $40,000.00 scheduled payments made on the $990,000.00 note applied to the $560,000.00 secured portion of the note. He claimed that, if these amounts were added to the approximately $393,000.00 collected by Peoples on Mr. and Mrs. Endress' behalf in 1985, 1986, and 1987 and to the additional uncollected amounts due on the 1986 notes, the $560,000.00 note would be fully satisfied.

Zerjav testified that he deposited $101,520.00 of the 1987 note payments, including Stavrides' payments, in a RealVest Management account which he controlled. Zerjav admitted that he never returned Stavrides' payment of $16,920.00 to Stavrides and did not apply it toward the debt owed to Mr. and Mrs. Endress.

The trial court denied Zerjav's motion for a directed verdict at the close of all the evidence. The jury returned a verdict in Stavrides' favor for $30,000.00. On appeal Zerjav claims insufficiency of the evidence, instructional error, and error in the admission of evidence.

For his first point, Zerjav contends that the trial court erred in failing to direct a verdict in his favor. He claims Stavrides failed to make a submissible case on the theory of intentional conversion because there was no substantial evidence of conversion or damages.

Zerjav argues that there was no substantial evidence of conversion because there was no evidence that either Peoples or Mr. and Mrs. Endress was entitled to the 1987 note proceeds. He relies on his trial testimony that Mr. and Mrs. Endress had been fully paid the amount owing them and that he was entitled to use the payments for any valid partnership purpose. Zerjav's argument has no merit.

■ Conversion by misappropriation is proved by 1) a fund belonging to plaintiff, 2) the placement of that fund in defendant's custody for a particular purpose, and 3) defendant's misappropriation which deprived plaintiff its possessory rights in that fund. *See Boyd v. Wimes*, 664 S.W.2d 596, 598–99 (Mo.App.1984); MAI 23.12(1)[1989 New]. Substantial evidence supports a finding that Stavrides placed his 1987 note payment in Zerjav's custody for the specific purpose of retiring the 1987 notes assigned to Peoples and that Zerjav misappropriated the funds by failing to make the payments on the 1987 promissory notes.

■ Zerjav's claim that Pinecrest Partners was entitled to the funds because the

assigned notes had been satisfied by other payments from other sources is immaterial. Zerjav converted Stavrides' funds by not using them for Stavrides' intended purpose, to pay off the assigned notes. Further, this claim is wholly without any evidentiary basis. There is no evidence in the legal file which would support Zerjav's conclusory testimony that the $125,000.00 and $40,000.00 payments on the $990,000.00 note reduced the amount of limited partners' payments owed under the Assignment and Security Agreement and the Escrow Agreement. The evidence clearly shows that the $125,000.00 and $40,000.00 payments were made on the $990,000.00 note and, under the instruments pursuant to which they were made, were payments in addition to those collected on the assigned limited partners' promissory notes. The $135,360.00 payment due March 1, 1987 to Mr. and Mrs. Endress on the assigned limited partners' notes, including Stavrides' note, was still due and owing on that date.

Zerjav further contends that there was no substantial evidence that Stavrides was directly and proximately damaged by Zerjav's misapplication of the funds because Stavrides voluntarily settled the New Jersey lawsuit and there was no evidence that Integrity was entitled to collect the 1987 payment. This argument likewise has no merit. The surety agreement required Integrity to make note payments if Stavrides failed to do so for any reason and required Stavrides to indemnify Integrity for any payment made on the notes. Stavrides was not required to engage in lengthy litigation to have that liability established by judgment.

The trial court did not err in denying the motion for a directed verdict. Point one is denied.

For his second point, Zerjav contends that the trial court erred in submitting Instruction No. 6, the verdict director, because it was not supported by substantial evidence of conversion or damages, it misstated the law, and "failed to hypothesize that the funds were specifically ear-marked for Peoples Bank pursuant to assignment." The court gave a verdict director patterned after MAI 23.12(1)[1989 New], modified to hypothesize

the facts claimed to constitute the misappropriation as required by the Notes on Use.

We have already addressed the question of substantial evidence to support submission of conversion under point one. Zerjav argues that the verdict director misstated the law because it allowed a finding of liability even if the funds were not diverted to Zerjav's personal use. The challenged portion of the verdict director instructed as follows:

Third, defendant failed to apply these funds toward payment of plaintiff's promissory note, but defendant used these funds for other purposes, and

A plaintiff is not required to prove that the defendant in a conversion action diverted the funds to defendant's personal use, only that defendant misappropriated the funds. *Boyd,* 664 S.W.2d at 598. The misappropriation arises from the diversion of the fund for a purpose other than the specified purpose. *Seabaugh v. Seabaugh,* 839 S.W.2d 49, 50 (Mo.App.1992); *see also Biermann v. Gus Shaffar Ford, Inc.,* 805 S.W.2d 314, 318 (Mo.App.1991). A verdict director which charges use of the funds "for other purposes" than the specified purpose follows MAI 23.12(1)[1989 New]. *Citizens Bank of Appleton City v. Schapeler,* 869 S.W.2d 120, 130 (Mo.App.1993). Zerjav diverted the funds by not using them to pay off the notes held by Peoples; whether he used them for personal or other purposes is irrelevant.

Zerjav also argues that the verdict director "failed to hypothesize that the funds were specifically ear-marked for Peoples Bank pursuant to assignment." In his argument under this point, Zerjav asserts that the instruction was deficient because it did not require a factual finding that any entity other than Pinecrest Partners was entitled to payment. He claims the only issue was whether the note was the property of Pinecrest Partners or had been assigned to some other party. This argument likewise has no merit.

The instruction required a finding that "plaintiff was the owner of $16,290 [sic] in funds delivered to defendant to pay off plaintiff's 1987 promissory note[.]" This instruction sufficiently submitted the element requiring a placement of a fund in defen-

dant's custody for a particular purpose. Ordinarily there is no requirement that the instruction submit evidentiary detail describing the party to whom the funds were to be paid or the instruments which created plaintiff's obligation. *See, e.g., Boyd,* 664 S.W.2d at 598–99 (where a conversion instruction which required a finding that plaintiff paid money to defendant's corporation to be held in escrow for payment of 1978 real estate taxes on her home was held to sufficiently hypothesize the facts necessary to prove conversion); *see also Citizens Bank of Appleton City,* 869 S.W.2d at 130 (approving an instruction which required a finding that plaintiff had given defendant a fund to pay off a promissory note). Neither of these instructions specified to whom the tax and note payments were to be made.

The uncontroverted evidence in the record was that Stavrides' note had been assigned to Peoples and Peoples had not assigned the notes to anyone else. Likewise, Zerjav's claim that the notes had been satisfied because other payments should have been applied to the outstanding debt was not supported by the documentary evidence in the record before us. Thus, there was no factual issue relative to payment. Further, as previously stated, these matters are collateral to this conversion action. Zerjav was obligated to apply the money according to Stavrides' purpose, to pay off the notes held by Peoples. He breached that duty when he took the money and used it for a different purpose. Zerjav's unilateral determination that no further money was due on the assigned notes did not create a defense or a factual issue for the jury to resolve.

The trial court did not err in submitting Instruction No. 6 to the jury. Point two is denied.

■ For his third point, Zerjav contends that the trial court erred in admitting evidence of the New Jersey lawsuit and voluntary settlement because this evidence was not probative of any injury or damages, was highly prejudicial, and inflamed the jury. In his one-paragraph argument under this point, Zerjav further argues only that the settlement was not the natural and proximate result of the wrong or breach of duty

by the defendant. The New Jersey litigation was the natural and proximate result of Zerjav's failure to use Stavrides' payment to pay off the promissory notes. Point three is denied.

■ For his fourth point, Zerjav contends that the trial court erred in admitting evidence of Stavrides' attorney's fees in the New Jersey action because they were irrelevant to the issue of damages. In his one-paragraph argument under this point, he argues that attorney's fees could not be awarded because the underlying action was concluded by a voluntary settlement and not by adjudication.

■ A plaintiff may recover attorney's fees incurred by a plaintiff in defense of collateral litigation caused by a defendant's breach of duty. *Forsythe v. Starnes,* 554 S.W.2d 100, 111 (Mo.App.1977); *O'Neil Lumber Co. v. Allied Builders Corp.,* 663 S.W.2d 326, 331 (Mo.App.1983). In order to be entitled to an award of attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the other party's wrong, that the fees were necessarily and in good faith incurred to protect the wronged party from injury, and that the amount of the fees is reasonable. *Forsythe,* 554 S.W.2d at 111. Attorney's fees incurred in defense of a collateral action may be awarded even if the action is settled before trial. *See O'Neil Lumber Co.,* 663 S.W.2d at 331 (affirming an award of attorney's fees incurred in defense of a collateral action resolved by a consent judgment).

The trial court did not abuse its discretion in admitting the evidence of Stavrides' attorney's fees. Point four is denied.

The judgment of the trial court is affirmed.

AHRENS, J., and HAROLD L. LOWENSTEIN, Special Judge, concur.