# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3914

_____

Dairy Farmers of America, Inc.,     *
    *
        Plaintiff/Appellant,     *
    *
   v.     *
    *
Travelers Insurance Company,     *
    *
        Defendant/Appellee,     *
    *   Appeal from the United States
   v.     *   District Court for the
    *   Western District of Missouri.
Cabool Transport, Inc.,     *
    *
        Third Party Defendant,     *
_____     *
    *
Travelers Insurance Company,     *
    *
        Third Party Plaintiff,     *
    *
   v.     *
    *
National Union Fire Insurance     *
Company,     *
    *
        Third Party Defendant.     *

_____

Submitted: September 13, 2004
Filed:  December 13, 2004
_____

Before RILEY, LAY, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

We address this litigation for the second time, and we agree with the district court:[1] "[t]hese issues were for the jury and the jury has spoken." We affirm.

In Dairy Farmers of America, Inc. v. Travelers Ins. Co., 292 F.3d 567 (8th Cir. 2002) (Dairy Farmers I), this court remanded the case to the district court for trial on Dairy Farmers of America, Inc.'s (DFA) breach of fiduciary duty claim based on Travelers Insurance Company's (Travelers) failure to appoint separate counsel to represent DFA in a personal injury claim. Id. at 572-75. At trial, DFA argued, if Travelers had hired separate counsel to represent DFA's interests, DFA's counsel would have filed a cross-claim for indemnity against co-defendant Cabool Transport, Inc. (Cabool). DFA contends separate counsel would have then prevented the tender of DFA's $250,000 deductible in the eventual settlement, thereby dispensing with DFA's need to file a subsequent indemnity action against Cabool.

In its special verdicts, the jury determined that, if Travelers had provided DFA with separate counsel, DFA would have filed a cross-claim against Cabool. However, the jury did not award DFA any attorney fees or any interest saved if a cross-claim

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

2

had been filed. The district court entered judgment in favor of Travelers, and later denied DFA's motion to amend judgment and for a new trial. DFA appeals.

## I.    BACKGROUND
### A.    Factual Summary

The factual summary pertaining to the general liability policy and the underlying personal injury claim (Ward claim) are discussed at length in our previous panel decision. See Dairy Farmers I, 292 F.3d at 570-71. For brevity purposes, we recount only the facts essential to our rulings in this appeal.

DFA is an agricultural cooperative marketing milk and dairy products produced by its members. Cabool, a trucking company, had been DFA's primary transportation company since 1969. The long-term business relationship between DFA and Cabool was governed by a Fleet Agreement, which provided Cabool, using independently owned vehicles and operators, would transport exclusively for DFA and would carry liability insurance. The Fleet Agreement also provided "all insurance provided by [DFA] shall be excess coverage," and further provided Cabool would "indemnify, defend and save harmless [DFA] from any and all claims, fines or other expenses arising out of, based upon or incurred because of injury to any person or persons, or damage to property sustained or which may be alleged to have been sustained by reason of any act or omission on the part of [Cabool], its agents, servants or employees." From 1995 to 1997, DFA required Cabool to have general liability insurance coverage in the amount of $6 million.

Travelers issued policies to both DFA and Cabool. DFA carried a business auto coverage policy with limits of $1 million, and a deductible of $250,000. Cabool had a primary policy with Travelers under a truckers coverage form with limits of $1 million. Cabool also carried an umbrella policy issued by National Union Fire Insurance Company (National Union) with limits of $5 million. Under the umbrella policy's "retained limits" provision, the National Union policy extended coverage to

3

Cabool only if the damages claimed exceeded the applicable limits of all other underlying insurance available to Cabool.

Based on its Fleet Agreement with Cabool, DFA maintained Cabool's primary and excess policies would need to be exhausted before any claim could trigger coverage under DFA's policy. However, the submissions prepared by DFA's broker did not specify this intention to Travelers. Thus, Travelers considered Cabool and its drivers as insureds under DFA's policy, and classified DFA as a trucker "in the business of providing transportation for hire." DFA and Cabool accepted Travelers's policies.

On February 29, 1996, a Cabool employee, while driving a truck leased to DFA under the Fleet Agreement, collided with an automobile driven by Deborah Ward (Ward). Ward sustained serious injuries, including permanent brain damage. Ward sued DFA, Cabool, and Cabool's driver in Ohio. Travelers appointed a single lawyer to defend all three defendants. DFA did not object to the joint representation, nor did DFA seek a declaratory judgment that Travelers's duty to defend required Travelers to retain independent counsel due to the potential conflict of interest between DFA and Cabool arising from the indemnity provision in the co-insureds' Fleet Agreement. Although Travelers assigned a single attorney to represent DFA and Cabool in previous actions, the Ward claim was the first claim exceeding Cabool's coverage limits of $1 million, thereby potentially triggering Cabool's obligation to indemnify DFA.

Travelers sought a coverage opinion regarding the application of the Cabool and DFA policies. The coverage opinion concluded both primary policies applied on a concurrent basis. Travelers notified DFA of its intended application, and Steven Lakes (Lakes), DFA's Director of Risk Management, objected, contending Cabool's primary and excess policies applied to the Ward claim before DFA's policy applied. Still, DFA took no legal action to protect its interests. Travelers obtained two

4

additional coverage opinions from the same attorney, who maintained the Cabool and DFA policies applied to the Ward claim on a concurrent primary basis.

Travelers exercised its unconditional right to settle the Ward claim by withdrawing DFA's deductible amount of $250,000 from an account controlled by Travelers and by tendering the $1 million limits of both the Cabool and DFA policies to National Union. Later, National Union settled the Ward claim for $4.4 million. This lawsuit arises from the actions of Travelers, as well as the inactions of DFA.

### B.    Procedural Summary

In June 1999, DFA filed this action, seeking a declaratory judgment that Travelers wrongly applied DFA's insurance policy and its $250,000 deductible to the Ward claim settlement. Alternatively, DFA's complaint sought reformation of the policy and raised multiple state tort claims, including breach of fiduciary duty. Travelers moved for summary judgment on all DFA claims, which the district court granted.

DFA appealed the entry of summary judgment on its tort claims. This court affirmed the district court on all claims, except DFA's breach of fiduciary duty claim. Dairy Farmers I, 292 F.3d at 576. On the breach of fiduciary duty claim, we assumed Missouri law would recognize a fiduciary relationship existed between Travelers and DFA. Id. at 573. Because Travelers had prior knowledge of the indemnity provision in the Fleet Agreement and knew or should have known that Cabool's obligation to indemnify DFA created a potential conflict of interest between its co-insureds, DFA and Cabool, we further assumed Missouri law would recognize "Travelers was obligated to (1) fully disclose the conflict of interest to DFA and Cabool, (2) explain the consequences of and alternatives to joint representation, and (3) obtain from both insureds their express consent to joint representation." Id. at 574. In the absence of express informed consent, we also assumed Missouri law would recognize

5

"Travelers's duty to defend obligated it to appoint separate and independent counsel to represent DFA and Cabool." Id.

In our prior opinion, we determined that damages resulting from Travelers's failure to enforce DFA's indemnification rights could arise separately from coverage issues. Id. at 575. For summary judgment purposes, we accepted DFA's contention that, had Travelers, as part of its defense costs, either filed or retained separate counsel who then filed a cross-claim in the Ward litigation, DFA would have been spared the time and expense of separate litigation against a highly valued business partner. Id. Finding DFA had made an adequate showing of damages at the summary judgment stage, we remanded the breach of fiduciary duty claim for trial. Id. at 576.

In July 2003, DFA tried its breach of fiduciary duty claim to a jury. Before trial began, Travelers filed a motion in limine on damages. The district court limited DFA's opening statement on its damages claim to: "(1) litigation expenses in seeking to collect indemnity from Cabool, (2) lost interest (if that has been calculated on the $250,000), and (3) a punitive damage claim for breach of fiduciary duty with respect to joint representation in the Ward case." DFA attempted to present its proof of damages through three witnesses, Lakes, DFA's Risk Management Director; Jeffrey Stempl (Professor Stempl), a law professor; and James T. Graves (Graves), an attorney.

At trial, Lakes testified:

[H]ad [DFA] had separate counsel [DFA] would have made a cross-claim against Cabool as part of the Ward litigation, and as a result . . . would have saved roughly, . . . $40,000 in attorneys fees to sue Cabool Transport with a projection of an additional $100,000 through the rest of that case. So roughly $140,000 in damages from suing Cabool.

6

Lakes testified, over objection, that DFA's interest claim on the loss of use of its $250,000 deductible from the date of the Ward Settlement, February 3, 1999, to the date of trial, July 7, 2003, amounted to "[a]pproximately $115,000 in interest charges," calculated at a statutory interest rate of 9 percent compounded annually. Lakes also attempted to value the damages DFA sustained to its longstanding business relationship with Cabool's principals, but the court sustained an objection based on a lack of foundation and legal authority. Through Lakes, DFA introduced into evidence Exhibits 114-A and 114-B, which were redacted attorney fee billing statements from Graves of approximately $24,000 and from Blackwell Sanders of approximately $15,000. Lakes testified DFA had paid the legal fees billed by Blackwell Sanders, but had not paid the legal fees billed by Graves. The court admitted the exhibits over objection.

After Lakes testified, DFA's counsel called Professor Stempl as an expert witness and asked him if he had an opinion as to the likely outcome if Travelers had appointed separate counsel in 1997, when the indemnity agreement conflict between DFA and Cabool was discovered. Travelers's counsel objected, arguing the question called for pure speculation. The district court sustained the objection, ruling Professor Stempl's opinion was speculative and had not been proffered in his Rule 26 Report.

On the issue of damages, Professor Stempl testified:

Dairy Farmers was deprived of the opportunity to be part of the solution until it was too late and as a result various things–various contingencies which could very well, in my view, have been resolved, we don't know with certainty but with some degree of probability, have made for a better outcome for Dairy Farmers were all denied to Dairy Farmers because of the insurer's conduct.

DFA's trial counsel then made an offer of proof that, if permitted, Professor Stempl would testify that had DFA been represented by separate counsel who contested the

7

tender of DFA's $250,000 deductible, National Union would have settled the Ward claim within Cabool's umbrella policy limits.

Later during trial, Graves offered testimony regarding the costs DFA incurred in attempting to recover its $250,000 deductible. Graves explained that, after the Ward settlement and after the district court entered summary judgment, DFA hired its current counsel to file a breach of contract and indemnity action against Cabool in the Circuit Court of Platte County, Missouri. At or near this time, Cabool became a dissolved corporation. In October 2002, DFA's counsel asked Graves if he would serve as a defendant ad litem on DFA's indemnity claim for the purpose of satisfying a consent judgment obtained by DFA against the newly dissolved Cabool. Graves testified he reached a fee agreement with DFA's counsel, and the Circuit Court of Platte County statutorily appointed Graves to serve as a defendant ad litem. In that capacity, Graves approved the court's entry of a $400,000 consent judgment in favor of DFA.

Thereafter, Graves filed a third-party petition against National Union, Cabool's excess carrier, seeking to satisfy the consent judgment. National Union denied liability and raised fifteen affirmative defenses. At trial, Graves testified National Union has, to date, declined coverage, declined to provide Cabool a defense for DFA's claim, and tendered no offer of settlement. Graves also testified that, as of June 19, 2003, his fees and costs in pursuing the third-party petition against National Union totaled nearly $25,000, and further testified, over defense objection, DFA could incur an additional $100,000 in future litigation costs related to the highly contested action.

Over DFA's objection, the district court submitted to the jury DFA's breach of fiduciary duty claim on the single ground Travelers failed to appoint separate counsel

8

to represent DFA's interests during the Ward litigation.[2] Following deliberations, the jury found that, had Travelers provided DFA with separate counsel during the pendency of the Ward litigation, DFA would have filed a cross-claim against Cabool. However, the jury awarded DFA no actual damages for attorney fees or for lost interest, and no punitive damages. The district court entered judgment for Travelers. DFA filed a motion to amend the judgment and for a new trial, which the district court denied.

In this appeal, DFA alleges multiple errors. First, DFA contends the district court erred in refusing to submit to the jury additional grounds on which DFA claims Travelers breached its fiduciary duty to DFA. Second, DFA claims the district court

---

[2] Jury Instruction "G" reads:

On plaintiff Dairy Farmers's claim for breach of fiduciary duty against defendant Travelers Insurance Company, your verdict must be for plaintiff Dairy Farmers if you believe Dairy Farmers has proved by a preponderance of the evidence that:

First, that Travelers knew of the indemnification provision contained in the contract between Cabool and Dairy Farmers, and

Second, that Travelers failed to appoint separate and independent attorneys to represent Cabool and Dairy Farmers in the Deborah Ward litigation, and

Third, that Dairy Farmers was thereby damaged;

Unless you believe:

First, that Travelers fully disclosed to Dairy Farmers that a conflict of interest existed between Dairy Farmers and Cabool, and

Second, that Travelers explained to Dairy Farmers the consequences of and alternatives to joint representation of Dairy Farmers and Cabool in the Deborah Ward litigation by one attorney, and

Third, that Travelers obtained Dairy Farmers's express consent to joint representation of Dairy Farmers and Cabool in the Deborah Ward matter by one attorney.

erred by failing to submit a special verdict question permitting the jury to find Travelers's failure to provide separate counsel caused DFA to lose its $250,000 deductible. Third, DFA claims the district court erred in refusing to submit all of DFA's litigation costs as damages incurred in attempting to recover its $250,000 deductible against Cabool. Fourth, DFA contends the district court erred in entering judgment unsupported by the evidence and based on conflicting special verdicts.

## II.    DISCUSSION

We review the district court's decisions regarding the denial of a request for jury instructions and special verdicts under an abuse of discretion standard. See Omega Healthcare Investors, Inc. v. Lantis Enters., Inc., 256 F.3d 774, 777 (8th Cir. 2001) (jury instructions); Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 932 (8th Cir. 2002) ("submission and form of interrogatories to the jury are matters within the sound discretion of the trial court"). We review de novo whether there was sufficient evidence to submit damages to the jury. Porous Media Corp. v. Midland Brake, Inc., 220 F.3d 954, 961 (8th Cir. 2000) (explaining appellate court reviews "whether a particular class of damages was properly before a jury on a de novo basis"); Hicks v. Capitol Am. Life Ins. Co., 943 F.2d 891, 894 (8th Cir. 1991) (reviewing de novo issue of whether evidence of loss was legally sufficient to go to jury). We review a district court's denial of a Rule 59 motion for an abuse of discretion. Top of Iowa Coop. v. Schewe, 324 F.3d 627, 632 (8th Cir. 2003).

### A.    Additional Breach of Fiduciary Duty Claims

DFA argues the district court erred in refusing to submit additional jury instructions on DFA's new claims that Travelers breached its fiduciary duty to DFA by (1) failing to provide timely notice of Travelers's intended handling of the Ward claim; and (2) withdrawing $250,000 from an escrow account with full knowledge DFA disputed that its deductible should be applied to the Ward settlement before exhausting Cabool's excess coverage.

10

After reviewing our prior decision and the trial transcript, we conclude the district court did not abuse its discretion in excluding DFA's requested instructions outlining additional breach of fiduciary duty claims. Although our prior decision did not expressly limit DFA's breach of fiduciary duty claim to a failure to appoint independent counsel and damages resulting directly therefrom, the district court's interpretation that the surviving claim did not allow recovery for either untimely notice of the Ward claim or Travelers's tender of DFA's $250,000 deductible was reasonable and entirely consistent with our prior decision. See Dairy Farmers I, 292 F.3d at 574-75.

Moreover, we agree with Travelers's contention that DFA failed to adduce any admissible proof regarding the likely outcome of the Ward claim negotiations, if Travelers had appointed separate counsel to represent DFA. The district court did not abuse its discretion in either excluding the "likely outcome" opinion of Professor Stempl as speculative or in refusing a requested jury instruction based on the opinion. Professor Stempl's proffered opinion that National Union would have settled the Ward claim without Travelers applying the DFA policy and deductible toward settlement lacked foundation and was purely speculative. Furthermore, the opinion was not disclosed, as required, in DFA's Rule 26 Report. See Fed. R. Civ. P. 26(a)(2)(B) ("The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions.").

## B.    Additional Special Verdicts

Next, DFA contends the district court erred in refusing to submit special verdicts permitting the jury to consider as damages the $250,000 deductible Travelers tendered to National Union as well as the full cost of DFA's litigation expenses to recover its tendered deductible. As we stated above, the district court's ruling precluding recovery of the deductible was reasonable in light of our earlier decision contemplating only the recovery of DFA's attorney fees incurred in a direct indemnity

11

action against Cabool as well as any calculable interest DFA lost on its tendered deductible.  Dairy Farmers I, 292 F.3d at 575.


## C. Damages

DFA also argues the district court erred in failing to submit to the jury DFA's damages theory that it was entitled to recover all of its legal expenses incurred to date in trying to recover its $250,000 deductible from Cabool.  In an instruction to the jury, the court, in part, declared:

> Damage from the failure to offer DFA separate counsel can be shown if you believe that DFA has established, by a preponderance of the evidence, that separate counsel would have been authorized and instructed by DFA to file and prosecute a cross-claim against Cabool during the pendency of the Ward lawsuit against it in Ohio.  If that has been established, you may find that the cost of current litigation against Cabool would have been avoided.  The cost of that litigation ended when a judgment was obtained.  The cost of collecting indemnity against National Union was not an obligation of Travelers.

The Missouri courts have ruled a "breach of the fiduciary duty constitutes a tort."  Dave Kolb Grading, Inc. v. Lieberman Corp., 837 S.W.2d 924, 940 (Mo. Ct. App. 1992).  According to the Restatement (Second) of Torts, "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."  Restatement (Second) of Torts § 914(2) (1979). Missouri courts have recognized a "collateral litigation" exception to the American Rule barring recovery of attorney fees in tort actions.  See Stavrides v. Zerjav, 927 S.W.2d 486, 492 (Mo. Ct. App. 1996) (plaintiff in conversion action against defendant could recover as damages the attorney fees plaintiff expended to defend indemnity action brought against plaintiff by a third party as a result of defendant's

12

conversion). The Missouri courts generally have applied a concept of reasonable foreseeability, requiring the attorney fees sought to be recovered be proximately and necessarily caused by the tortious breach. Id. The Missouri Court of Appeals explained:

> Attorney's fees may be allowed in cases where they are incurred because of involvement in collateral litigation . . . . To be awarded attorney's fees incurred as a result of collateral litigation, the wronged party must show that the litigation was the natural and proximate result of the wrong or breach of duty by the other party, that the fees were necessarily and in good faith incurred to protect the wronged party from injury, and that the amount of the fees was reasonable.

St. Louis County v. Taylor-Morley, Inc., 923 S.W.2d 507, 512 (Mo. Ct. App. 1996); Stavrides, 927 S.W.2d at 492 (concluding collateral litigation was "the natural and proximate result" of defendant's breach of duty). Cf. Shen v. Leo A. Daly Co., 222 F.3d 472, 479 (8th Cir. 2000) (declaring, under Nebraska law, attorney fees awarded for collateral suit brought in Taiwan to protect plaintiff's interest "were proper as an element of damages for breach of fiduciary duty").

Our review of the record establishes the district court's decision not to submit DFA's proposed damage instruction for post-judgment attorney fees incurred in attempting to collect the consent judgment from National Union was proper based on the highly attenuated evidence adduced. Arguably, the post-judgment litigation expenses were not proximately caused by Travelers's breach of fiduciary duty nor would these expenses have been contemplated by the parties at the time the insurance policies were issued. Moreover, DFA has presented the district court and this court with no legal authority in support of its recovery of litigation expenses incurred in its third-party action against National Union to collect an indemnity judgment rendered against a dissolved corporation. We have searched the common law and insurance treatises and have uncovered no authority permitting such a recovery.

**D.    Judgment**

Finally, DFA contends the district court erred in entering judgment unsupported by the evidence and based on conflicting special verdicts.  After several hours of deliberation, the jury returned special verdicts finding that, if Travelers had offered DFA separate counsel, DFA would have instructed counsel to file and prosecute a cross-claim against Cabool before settlement and termination of the Ward litigation; however, the jury awarded no damages for attorney fees or lost interest.  Finding no actual damages, the jury awarded no punitive damages. DFA claims these special verdicts are inconsistent and irreconcilable.  We disagree.  In the first instance, DFA waived its claim of inconsistent verdicts by failing to object to the inconsistency before judgment was entered.  Doe v. Washington County, 150 F.3d 920, 924 (8th Cir. 1998) (declaring "[i]f a party feels that a jury verdict is inconsistent, it must object to the asserted inconsistency and move for resubmission of the inconsistent verdict before the jury is discharged or the party's right to seek a new trial is waived") (citation omitted).

Even assuming the claim were not waived, a jury's finding of liability without a corresponding award of damages does not invalidate the verdict.  Spears v. Hough, 458 F.2d 529, 531 (8th Cir. 1972); see Wright v. Hoover, 329 F.2d 72, 76 (8th Cir. 1964) (stating "fixing damages is peculiarly a jury function").  In its memorandum and order denying DFA's post-trial motion, the district court carefully considered the jury's special verdicts and determined the verdicts were not inconsistent.  The court declared:

> Contrary to plaintiff's argument, however, there do appear to be acceptable rationales for the jury to deny fees.  If the jury was looking at the fees it would take to make a recovery on a cross-claim, **there was no direct evidence allowing that to be appraised.**  There was testimony about charges for recovering a default judgment . . . [but] the

jury was [not] obligated to accept those charges as reasonable, or to come up with some figure **unsupported by evidence.**

(emphasis added.)

Clearly, DFA sustained damages as a result of Travelers's failure to appoint separate counsel to negotiate DFA's interests throughout the pendency of the Ward litigation. But the hard truth is: DFA failed to carry its burden of proving damages flowing directly from the breach. Although DFA introduced Exhibit 114-B, a compilation of billing statements from Blackwell Sanders reflecting approximately $15,000 charged to DFA for attorney fees, presumably for legal work performed in DFA's indemnity action against Cabool, the exhibit contained no information helpful to the jury, and no witness took the stand to explain the billing statements. If the jury found DFA's actual expenses speculative or unreasonable, then, as the district court noted, "the jury . . . had no authority to pull a more modest figure out of the air."

Similarly, while Lakes testified to a rough lost interest figure, DFA offered no exhibit explaining how the interest was calculated or why DFA was entitled to recover lost interest beyond the entry of consent judgment in October 2002. Nor did DFA provide the jury with any admissible proof of calculable damages related to its injured business relationship with Cabool. After observing the entire trial, the district court soundly reasoned, "[t]he jury apparently . . . concluded, as I would likely have done as a fact-finder, that collectibility was unlikely or too speculative to use to calculate lost interest."

A burden of proof is exactly that–a burden. Instead of focusing its damages theory on actual damages sustained, DFA pitched to the jury speculative damages related to its highly contested third-party action against National Union, and provided the district court with no legal precedent to support DFA's theory of damages. The jury was entitled to, and apparently did, reject DFA's theory of damages. Our record

15

review convinces us the jury faithfully followed the law and rendered special verdicts consistent with the scant amount of solid evidence admitted.

## III.   CONCLUSION

DFA had its day in court.  DFA was entitled to a fair trial, not a perfect trial, and DFA received a fair trial.  We affirm.

_____