Rondell SMILEY, Larry D. Smiley, and Bob L. Smiley, Plaintiffs–Respondents,

v.

FARMERS INSURANCE COMPANY, INC., Defendant–Appellant.

Rondell SMILEY, Larry D. Smiley, and Bob L. Smiley, Plaintiffs–Appellants,

v.

FARMERS INSURANCE COMPANY, INC., Defendant–Respondent.

Nos. 15386, 15395.

Missouri Court of Appeals, Southern District, Division Two.

May 2, 1988.

C.H. Parsons, Jr., Dennis P. Wilson, Parsons, Mitchell, Wilson and Satterfield, Dexter, for Rondell Smiley et al.

James E. Spain, Samuel P. Spain, Dale E. Nunnery, Hyde, Purcell, Wilhoit, Spain, Edmundson and Merrell, Poplar Bluff, for Farmers Ins. Co., Inc.

PREWITT, Presiding Judge.

Velma Smiley was killed when struck by an automobile driven by an uninsured motorist. Her children sought judgment against defendant under the uninsured motorist coverage of a policy of insurance issued to Mrs. Smiley. Following jury trial a verdict was returned finding that plaintiff's damages were $100,000 and assessing fault 30 percent to Mrs. Smiley and 70 percent to the motorist. A stipulation was entered into that the uninsured motorist coverage was $30,000 and judgment was entered in favor of plaintiff for that amount. Plaintiffs and defendant appeal.

Defendant contends that the trial court erred in entering judgment against it "in that the plaintiff failed to make a submissible case on the theory of failure to keep a careful lookout because there was no evidence that the uninsured motorist could have seen the decedent prior to the time she did, or in time to have taken effective precautionary action."

To determine this question certain general principles must be followed. In reviewing to determine if a submissible case was made the evidence and reasonable inferences from it are viewed most favorably to plaintiff. *Wilson v. Missouri–Kansas–Texas Railroad Co.,* 595 S.W.2d 41, 44 (Mo.App.1980). Automobile drivers have a duty to keep a vigilant lookout ahead and laterally. *Goodloe v. Pink,* 683 S.W.2d 653, 655 (Mo.App.1984). To support a case on the theory of failure to keep a lookout there must be evidence that the defendant saw or could have seen plaintiff in time to have avoided the collision. *Jenkins v. Jordan,* 593 S.W.2d 236, 238 (Mo.App.1979). Circumstantial evidence may make a submissible case on failure to keep a lookout. *Id.*

Mrs. Smiley was 61 years old. She was employed as a cook at Belle's Freeze Queen in Bernie. On December 16, 1985, she left work at approximately 6:00 p.m. Before leaving she indicated to a fellow employee that she needed to hurry home to get ready to attend a school function. Velma Smiley lived a block east and a half block north of the intersection of Highway 25 and Day Avenue. She was crossing Highway 25 on foot, south of its intersection with Day Avenue, when she was struck by an automobile driven by LaDawn Ann Spitzer, an uninsured motorist. Mrs. Spitzer told the police officer investigating the accident that she "just didn't see the lady". Mrs. Smiley was wearing dark colored clothing. The policeman testified that there were two street lights at the intersection of Day and Highway 25, one at the northeast corner and one at the southwest corner.

Highway 25 is a two-lane highway running north and south through Bernie. The highway is straight and level for at least a mile south of Day Avenue. Mrs. Smiley was attempting to cross it from west to east. At the point she was crossing the highway is 28 feet, 9 inches wide from curb to curb. Mrs. Spitzer was driving north at approximately 25 miles per hour. It was dark and her headlights were on low beam. She was traveling in the northbound or easternmost lane of traffic.

Mrs. Spitzer testified that the brakes and lights on her car were operating properly. She said she was not meeting any other traffic just before the collision. She testified there were no obstructions to her seeing and she was able to see both lanes but "not real well I don't guess, I don't know." She said Mrs. Smiley was "hurrying across the street" when she first saw her "just a little bit left" of the center line of the highway. Mrs. Spitzer testified she immediately applied her brakes and swerved her vehicle to the right. Mrs. Smiley's body came to rest just south of the intersection of Day Avenue and Highway 25. She apparently died almost instantly. Blood was found 45 to 50 feet south of the body. The blood was 4 feet from the eastern edge of Highway 25. Damage on Mrs. Spitzer's car from the collision was on the driver's side, commencing about the center of the vehicle for approximately two feet.

Section 307.060(2), RSMo 1978, requires that on low beam headlights be "so aimed and of sufficient intensity to reveal persons and vehicles at a distance of at least one hundred feet ahead". In the absence of contrary evidence it is presumed that a vehicle's headlights met that standard. *Brown v. Wooderson,* 362 S.W.2d 525, 529 (Mo.1962); *Jenkins v. Jordan,* 593 S.W.2d 236, 238–239 (Mo.App.1979). "It is a matter of common knowledge that the light rays from an automobile headlight diverge and illuminate not only the road ahead but to the side for a considerable distance." *Grimes v. St. Louis–San Francisco Ry. Co.,* 341 Mo. 129, 106 S.W.2d 462, 465 (1937); *Hauck v. Kansas City Public Service Co.,* 239 Mo.App. 1092, 200 S.W.2d 608, 614 (1947). It is also known that light rays of headlights widen as their distance in front increases. *Hauck,* 200 S.W.2d at 614.

This court may judicially know that the average walking speed of a person is 2.9 to 4.4 feet per second. *Miller v. St. Louis Public Service Company,* 389 S.W.2d 769, 772 (Mo.1965); *McFarland v. Wildhaber,* 334 S.W.2d 1, 3 (Mo.1960); *Immekus v. Quigg,* 406 S.W.2d 298, 301 (Mo.App.1966). Courts have judicially noticed that the average reaction time of a motorist is ¾ second.

*Burns v. Maxwell,* 418 S.W.2d 138, 141 (Mo.1967).

Although courts cannot judicially know the precise distance with which an automobile can be stopped, they have judicially noticed that at 25 miles an hour it can be stopped in a shorter distance than 130 feet. See *Jones v. Fritz,* 353 S.W.2d 393, 397 (Mo.App.1962). See also *McGraw v. Corrin,* 303 A.2d 641, 644 (Del.1973) (judicial notice taken that average normal braking distance of a car at twenty-five miles per hour is ninety-one feet).

Considering the evidence most favorable to plaintiffs a submissible case on lookout was made. From curb to curb the highway was 28.9 feet. Blood was found 45 to 50 feet south of Mrs. Smiley's body, 4 feet from the east curb line. This finding was consistent with skid marks showing where Mrs. Spitzer's car left the roadway and damage to the front left half of Mrs. Spitzer's vehicle. The jury could have found that this was approximately where Mrs. Smiley was hit. If so, she had traveled at least 24.9 feet across the pavement before being struck.

If, as Mrs. Spitzer says, she could have seen both lanes of travel, she could have seen Mrs. Smiley when she entered the pavement, 24.9 feet from where she was eventually struck. It is unlikely that Mrs. Smiley would have been running through the south bound lane as there were no cars coming that way. It is also unlikely that a 61–year-old woman at the end of a day's work would be running across the highway even if she was anxious to get home. Mrs. Spitzer said Mrs. Smiley was "hurrying" but did not say she was running. The jury could have found that she was walking at the fastest average walking speed. At that rate, 4.4 feet per second, it would have taken Mrs. Smiley 5⅔ seconds to have traveled this 24.9 feet.

At 25 miles per hour an automobile travels 36⅔ feet per second. Traveling at 36⅔ feet per second, Mrs. Spitzer's vehicle would have been 207½ feet south of where the blood was found when Mrs. Smiley was 24.9 feet from there. At ¾ of a second reaction time Mrs. Spitzer would have traveled 27.5 feet until she applied the brakes, leaving 180 feet thereafter to have stopped the vehicle or otherwise have avoided the collision. Thus the vehicle could have been stopped and the collision avoided.

If Mrs. Smiley had been walking, or running, half again as fast as the highest average walking speed, at 6.6 feet per second she would have taken 3.77 seconds to have traveled 24.9 feet. During this period Mrs. Spitzer's vehicle would have traveled 138.33 feet. Deducting 27.5 feet travel for reaction time, that would leave 110.83 feet for her thereafter to have stopped, slowed or swerved.

These calculations do not take into effect that two witnesses said Mrs. Smiley was not walking directly across the street but was crossing it "catty-corner". That of course would increase the distance that she had to walk on the highway and the time Mrs. Spitzer would have had to stop, or otherwise avoid her, but as there is no evidence of how much the distance would increase, the distance used here is the width of the highway.

■ The mobility of a car and the quickness with which it may be swerved is a matter of common knowledge. *State ex rel. Missouri Highways and Transportation Commission v. Legere,* 706 S.W.2d 560, 563 (Mo.App.1986). Formal proof is unnecessary for courts to know that present day automobiles respond quickly and accurately to a turn of the steering wheel. *Id.* Besides stopping, Mrs. Spitzer would have had time to swerve and avoid Mrs. Smiley had she seen her entering upon the highway. A submissible case was made on failure to keep a lookout as the jury could find that Mrs. Spitzer could have seen Mrs. Smiley in time to have avoided the collision by stopping or swerving.

■ Plaintiffs present one question in their appeal. They contend that the trial court erred in not awarding them interest from Mrs. Smiley's death to the date of judgment. Plaintiffs do not contend that § 408.040.2, RSMo Supp.1987, which provides for prejudgment interest under certain circumstances in "tort actions" applies.

They do contend that the intent of it "was to implement a public policy which required pre-judgment interest in order to encourage early settlement of cases and to discourage long drawn out litigation." However that may be we cannot expand that policy to allow prejudgment interest here.

Missouri Supreme Court decisions are controlling in this court. Mo. Const. Art. V, § 2. The general rule set forth by that court is that prejudgment interest should not be awarded on an unliquidated claim because "where the person liable does not know the amount he owes he should not be considered in default because of failure to pay." *Fohn v. Title Insurance Corp. of St. Louis*, 529 S.W.2d 1, 5 (Mo. banc 1975). Because of such holdings the trial court correctly denied prejudgment interest.

The judgment is affirmed.

FLANIGAN and MAUS, JJ., concur.

HOGAN, J., not participating.