**NEXT DAY MOTOR FREIGHT, INC., Plaintiff/Respondent,**

v.

**Robert S. HIRST, Independent Business Forms, Inc., and IBF, Inc., Defendants/Appellants.**

**No. 70441**

Missouri Court of Appeals, Eastern District, Division Two.

Aug. 19, 1997.

---

dants, Independent Business Forms, Inc. and IBF, Inc. Both corporations were involved in printing and distributing business forms and papers. Independent developed equipment and cash flow problems and did not pay some of its creditors. One of those creditors was plaintiff, a trucking company which delivered Independent's products. Hirst transferred equipment and accounts receivable from Independent to himself and then to IBF on August 31, 1992. Independent had issued an Industrial Revenue Bond on which Hirst and IBF were co-guarantors. Thereafter plaintiff filed its action to recover the arrearage in its freight bills. This resulted in the default judgment of $1999.35 referred to above.

Plaintiff brought the instant action, seeking to pierce the corporate veil pursuant to an alter ego theory and to recover from the three defendants (1) the amount of the default judgment, (2) actual and punitive damages for fraud, and (3) attorneys' fees and costs.

The evidence was in conflict concerning the elements necessary to invoke the court's equitable power to pierce the corporate veil under an alter ego theory. *See Sansone v. Moseley,* 912 S.W.2d 666 (Mo. App.1995)[3–5]. There was evidence from which the trial court could have found the necessary elements. While if we had been the finder of fact we might have reached a different conclusion, we affirm the court's decision piercing the corporate veil and the award of damages in the amount of the default judgment under *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976).

The thrust of the alter ego action was to impose upon Hirst and IBF the obligation of paying the default judgment against Independent. That judgment included presumably whatever plaintiff was entitled to from Independent. The award of prejudgment interest on that judgment was not authorized. The award of prejudgment interest is reversed. We need not review the court's determination that the transfers from Independent to Hirst to IBF were a violation of the Uniform Fraudulent Transfer Act, sections 428.005 *et seq.* RSMo 1994, as no sepa-

Louis J. Basso, T. Robert Cook, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for defendants/appellants.

Robert J. Selsor, Helmut M. Starr, Lisa S. Leary, Suelthaus & Walsh, P.C., St. Louis, for plaintiff/respondent.

GERALD M. SMITH, Judge.

Defendants Independent Business Forms, IBF and Hirst appeal from a judgment against them in the total amount of $35,070.42. That total consisted of $1999.35 arising from a default judgment against defendant Independent Business Forms, Inc., $540 for prejudgment interest, punitive damages of $10,000, and $22,531.07 for attorneys' fees and costs. The initial default judgment for $1999.35 arose when Independent failed to pay plaintiff $678.94 in shipping charges. We affirm in part and reverse in part.

Defendant Hirst was the primary owner and operator of the two corporate defen-

rate relief was awarded for the violation found. It was simply another method to impose the obligation for satisfying the judgment against Independent upon Hirst and IBF.

The common law fraud claim resulted in an award of the amount of the original default judgment and punitive damages. Defendants did not raise here, and we do not address, the viability of the fraud claim in view of plaintiff's failure to include it in its original suit against Independent, the applicability of *res judicata*, and the prohibition against splitting a cause of action.

 The elements of common law fraud are: 1. a representation; 2. falsity of the representation; 3. materiality of the representation; 4. the speaker's knowledge of its falsity or ignorance of the truth; 5. the speaker's intent that the representation be acted on by the hearer in a manner reasonably contemplated; 6. the hearer's ignorance of the falsity of the representation; 7. the hearer's reliance on the truth of the representation; 8. the hearer's right to rely thereon; and, 9. injury to the hearer proximately caused by the reliance. *Scott v. Car City Motor Co., Inc.,* 847 S.W.2d 861 (Mo.App. 1992)[1–3]. Failure to establish any element of fraud precludes recovery. *Id.* Plaintiff must prove the claim by clear and convincing evidence. *Wion v. Carl I. Brown & Company,* 808 S.W.2d 950 (Mo.App.1991)[3–5]. Evidence that amounts to no more than suspicion or conjecture of fraud does not suffice to prove fraud. *Scott, supra* at [6–8].

 Plaintiff contends that defendant Independent defrauded it when it called Independent on the status of its billables due from Independent. Plaintiff's only evidence concerning fraud came from a computerized "customer master notes". Whenever an employee of plaintiff would call a customer concerning late payments, the employee would enter on the master log for that customer the date and nature of the phone call. The master log for Independent commenced in April 1991, and continued until August 8, 1992. It contains a number of calls concerning late payment by Independent of plaintiff's invoices. Plaintiff premises its contention of fraud on an entry of July 22, 1992,

which read "Talked to Pat and she said her boss wont be in until Friday and that is when she is going to cut a check for June invoices and for the bal due in May. She said she is going to call me on Friday and give me a check number." The president of plaintiff testified that after that notation plaintiff made three additional shipments for Independent totaling $150.37. He also testified that if plaintiff had known Independent was not going to pay plaintiff they would not have made the shipments.

The evidence does not establish fraud. There was no evidence of the authority of "Pat" to speak on behalf of the company. Further the evidence does not reflect that what Pat said was a misrepresentation. The customer log reflects a series of calls to Independent concerning late payments. On a number of occasions the employee at Independent indicated that checks would be issued at some future date. These checks apparently were issued because the amounts they represent were not indicated as owing in plaintiff's exhibits. There is nothing to indicate that Pat believed that the check would not issue on Friday at the time she made the statement, or that she did not intend to issue the check on that date when she made the statement. The president did not testify that plaintiff made the subsequent shipments in reliance on the telephone call of July 22. He only testified that plaintiff would not have made the shipments if it had known it would not be paid, an obvious conclusion. We need not deal with other elements of a fraud claim. The court erred in making a finding of fraud and awarding actual and punitive damages.

 We turn to the issue of attorneys' fees. If a contract or statute provides that attorneys' fees are recoverable, counsel is entitled to a *reasonable* fee. *Howard Construction Company v. Teddy Woods Construction Company,* 817 S.W.2d 556 (Mo. App.1991)[16–18](*emphasis added*). When attorneys' fees are awarded in non-statutory or non-contractual situations, the test for the award is also whether it is reasonable. *Mitchell v. Mitchell,* 711 S.W.2d 572 (Mo. App.1986)[9]. To recover attorneys' fees in-

curred through collateral litigation, the party seeking the award must show that the litigation was the natural and proximate result of the other party's wrong, that the fees were necessarily and in good faith incurred to protect the wronged party from injury, and that the fee amount is reasonable. *Stavrides v. Zerjav*, 927 S.W.2d 486 (Mo.App.1996)[12–14].

■ Plaintiff contends it is entitled to recover attorneys' fees based upon its tariff included in its contract with defendant Independent and for a variety of other reasons including that it was required by defendants' actions to engage in this collateral litigation. In determining the reasonable value and amount of attorney fees recoverable, there are many factors appropriate for consideration. They include: the rates customarily charged by the attorneys involved and by other attorneys in the community for similar services; time taken; the nature and importance of the matter in which services are rendered; the degree of responsibility imposed upon the attorney; the value of the property or money involved; the degree of professional ability called for and used; and the result. *Howard Construction, supra.*

■ "Reasonableness" encompasses at least two different concepts. One, obviously, is that the services provided were necessary for the presentation of the case and the charges are in keeping with the usual charges for such service. A second concept is that it is reasonable to engage in the litigation in the first place. This concept is reflected in the factor set out in *Howard Construction, supra,* regarding the value of the property or money involved, and the good faith requirement referred to in *Stavrides, supra.*

■ The Seventh Circuit addressed an analogous situation in *Taxman Clothing Company,* 49 F.3d 310 (7th Cir.1995). The case is distinguishable because it involved a bankruptcy estate and the lawyer seeking a fee was counsel for the trustee and bore a fiduciary relationship to the estate. The court applied a common sense analysis to "reasonable" attorneys' fees when it stated that counsel should not proceed with the litigation when the economic benefit to the client is heavily outweighed by the attorneys' fee required to effectuate the benefit. *Id.* at [1]. That reasoning is applicable to the present case.

■ The plaintiff here had unpaid invoices totaling less than $700. It had a judgment against Independent for almost $2000. Developing a case to pierce the corporate veil is time consuming and expensive. It is readily apparent that the amount of attorneys' fees to even prepare the petition would exceed the amount of the default judgment. The fraud claim was totally unsupported by any evidence and it should have been apparent to counsel that it might be subject to res judicata and splitting a cause of action defenses. Evidence of payment for professional services is substantial evidence that the charges were reasonable and necessary. Plaintiff's president never testified that he had paid for the attorney's services in this case. He testified that he had "incurred" attorneys' fees. The attorneys in their verified proposed findings of fact used the same word. "Incur" is "become liable or subject to". It is a synonym of "accrue". Webster's Third New International Dictionary 1146 (1981). Accruing or incurring attorneys' fees is not the same as paying. We find it highly unlikely that any reasonable business man would commit his company to legal expenditures in excess of $20,000 in an attempt to recover less than $2000.

■ Litigation by its very nature generates attorneys' fees. But it is not the purpose of litigation to produce attorneys' fees, though they are a byproduct of the system. We are unable to find any reasonable basis for pursuing this collateral litigation except to generate attorneys' fees. It has consumed judicial resources at both the trial level and the appellate level that could have been more productively utilized. Defendants have been put to their own expense which is punishment enough for the conduct the trial court, on disputed evidence, found existed. The award of attorneys' fees in collateral litigation may take on a punitive character and may be disallowed. *Nepera Chemical, Inc. v. Sea–Land Service, Inc.,* 794 F.2d 688 (D.C.Cir.1986)[11,12]. *See also Cable Ma-*

*rine, Inc. v. M/V Trust Me II,* 632 F.2d 1344 (5th Cir.1980)[2]. The words of the court in *King World Productions, Inc. v. Financial News Network, Inc.,* 674 F.Supp. 438 (S.D.N.Y.1987), *aff'd,* 834 F.2d 267 (2nd Cir. 1987) are applicable here: "While parties to a litigation may fashion it according to their purse and indulge themselves and their attorneys ... they may not foist their extravagances upon their unsuccessful adversaries. *(cite omitted)*" We find the award of attorneys' fees unconscionable and inequitable.

Judgment awarding plaintiff $1999.35 against all three defendants is affirmed. In all other respects the judgment is reversed. Plaintiff's motion for attorneys' fees on appeal is denied. Costs are taxed against plaintiff.

CRANE, P.J. and PUDLOWSKI, J., concur.