James BERRA, Plaintiff/Respondent,

v.

Charles E. DANTER, Defendant/Appellant.

No. ED 92279.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 27, 2009.

Application for Transfer to Supreme Court Denied Dec. 7, 2009.

Application for Transfer Denied Jan. 26, 2010.

Paul Hasty, Jr., Schmitt Manz Swanson & Mulhern, P.C., Overland Park, KS, Ka-thryn M. O'Shea, Kansas City, MO, for appellant.

Jess W. Ullom, Doster, Ullom LLC, Chesterfield, MO, David N. Damick, St. Louis, MO, for respondent.

Leland F. Dempsey, Dempsey & Kingsland, P.C., Kansas City, MO, for Amicus Curiae.

KATHIANNE KNAUP CRANE, Presiding Judge.

Plaintiff filed a lawsuit against defendant to recover damages for injuries sustained and medical expenses incurred as a result of being struck by a vehicle driven by defendant as plaintiff was crossing a street. The jury returned a verdict assessing eighty-five percent fault to defendant and fifteen percent fault to plaintiff. It found the total amount of plaintiff's damages, disregarding plaintiff's fault, to be $300,000. The trial court reduced the damages by the percentage of fault assessed against plaintiff and entered judgment in plaintiff's favor in the amount of $255,000.

On appeal, defendant challenges (1) plaintiff's introduction of defense counsel as an insurance company employee; (2) the trial court's pre-trial order, entered after both parties submitted motions to determine the value of medical services pursuant to section 490.715.5 RSMo (Cum. Supp.2008),[1] finding that the amount of medical expenses reflected in plaintiff's billing statements was the reasonable value of medical services; (3) the sufficiency of the evidence of negligence; (4) a voir dire question on whether the panel could make a substantial award of damages; and (5) the submission of plaintiff's non-MAI

---

1. All further statutory references will be to RSMo (Cum.Supp.2008), unless otherwise indicated.

jury instruction on a driver's duty of care. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

We view the facts in the light most favorable to the verdict. In April 2001, at approximately 9:00 p.m., defendant left Spiro's restaurant on Watson Road and was driving southbound on Watson Road with his vehicle's headlights turned on. Watson Road generally runs north-south and has two traffic lanes running in each direction with an additional parking lane on either side of the street. Defendant was driving at or below the 30 mile per hour (m.p.h.) speed limit, and could have been driving at a speed of 25 m.p.h. He was driving in the left southbound traffic lane because he anticipated making a left turn. There was little or no other traffic. The sky was clear that evening, and the street was dry.

In the meantime, plaintiff had parked his vehicle in the southbound parking lane on the west side of Watson Road in the middle of the block between Arthur and Fyler Streets which was down the street from Spiro's. He began to walk directly across Watson Road towards Hatfield's on the east side of Watson. The area where plaintiff was walking was well-illuminated by mercury vapor streetlights. Plaintiff looked for traffic before he started to cross the road and continued to look in all directions for any traffic while crossing. There were no obstructions to vision. Plaintiff began crossing the street at a normal walking pace, crossed the first southbound lane of traffic, and was struck by defendant's vehicle as he had almost finished crossing the second southbound lane. Upon being struck, plaintiff was thrown up and onto the windshield of defendant's vehicle, directly in front of defendant. Defendant did not see plaintiff until plaintiff's face struck the windshield. At that moment, defendant applied his brakes and stopped within a few feet.

Plaintiff thereafter filed the underlying lawsuit against defendant. At the beginning of trial, the trial court took judicial notice that a driver has a reaction time of 3/4 of a second, and that a car traveling 1 m.p.h. travels 1.5 feet per second. The case was submitted to the jury on the alternative submissions of failure to keep a proper look out and failure to act after the danger of a collision became apparent. Plaintiff's comparative fault was also submitted.

### DISCUSSION

#### I. *Insurance Question*

For his first point, defendant claims that the trial court erred in permitting plaintiff to introduce defense counsel as an employee of Safeco Insurance Company during voir dire. He maintains that this action unduly highlighted the existence of insurance.

Before trial, defendant filed a motion *in limine* that sought to prevent plaintiff from asking the venire panel whether any of the panel members had any connection to the insurance company representing defendant in this case. The court denied the motion *in limine*. The trial court allowed plaintiff's attorney to ask: "Ms. Schubert is in house counsel for Safeco Insurance— Is any one here or a family member an employee of or have a financial interest in or provide services for that company?" During the course of voir dire, plaintiff's attorney asked, "Miss Schubert is in-house counsel for Safeco Insurance. Is anyone here or one of your family members an employee of or have a financial interest in or provides services for that company?" Defendant did not object to this question when it was asked.

■ A motion *in limine* standing alone is insufficient to preserve error for appellate review; a party must object at the time of the alleged error to preserve the issue for appellate review. *Roberson v. Weston*, 255 S.W.3d 15, 18 (Mo.App.2008). Because defendant did not object to the voir dire question when it was asked, defendant failed to preserve this point for appeal. *Id.* There is no basis for plain error review. *See Richter v. Kirkwood*, 111 S.W.3d 504, 507–09 (Mo.App.2003). Point one is denied.

## II. *Section 490.715.5*

■ Defendant's second point is directed to the trial court's pre-trial order entered pursuant to section 490.715.5, finding that the amount of medical bills reflected in plaintiff's billing statements to be the reasonable value of plaintiff's medical services. Defendant asserts that plaintiff failed to rebut the presumption contained in section 490.715.5 that the dollar amount necessary to satisfy the financial obligation to a health care provider represents the value of the medical treatment rendered. He contends that section 490.715.5 required the trial court to limit its determination of the value of plaintiff's medical treatment to the amount plaintiff actually paid for medical treatment. Although defendant characterizes this error as an abuse of discretion, his argument clarifies that he is really challenging the trial court's interpretation of section 490.715.5, and thus is challenging the trial court's application of law.

Section 490.715.5 provides:

5. (1) Parties may introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party.

(2) In determining the value of the medical treatment rendered, there shall be a rebuttable presumption that the dollar amount necessary to satisfy the financial obligation to the health care provider represents the value of the medical treatment rendered. Upon motion of any party, the court may determine, outside the hearing of the jury, the value of the medical treatment rendered based upon additional evidence, including but not limited to:

(a) The medical bills incurred by a party;

(b) The amount actually paid for medical treatment rendered to a party;

(c) The amount or estimate of the amount of medical bills not paid which such party is obligated to pay to any entity in the event of a recovery.

Notwithstanding the foregoing, no evidence of collateral sources shall be made known to the jury in presenting the evidence of the value of the medical treatment rendered.

In addition, section 490.525.2 RSMo (2000) provides:

Unless a controverting affidavit is filed as provided by this section, an affidavit that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary.

Before trial, plaintiff and defendant each filed a motion to determine the value of medical treatment pursuant to section 490.715.5(2). Plaintiff attached to his motion copies of his medical bills in the total amount of $90,062.52; health care provider affidavits attesting to the reasonableness of these charges; and a Medicare medical payment summary. The summary showed that plaintiff was billed $118,015.61, but

had paid $28,734.37. Plaintiff requested the trial court to find that either the amount of bills reflected in the billing statements, $90,062.52, or the amount reflected in the Medicare summary, $118,015.61, constituted the reasonable value of plaintiff's medical treatment. The trial court found that the amounts reflected in the billing statements were the reasonable value of the medical services and allowed that amount, $90,062.52, to be presented to the jury.

Defendant asserts that plaintiff did not rebut the presumption in section 490.715.5(2), and that the trial court should have allowed in evidence only the amount that plaintiff actually paid to satisfy his medical bills. Defendant acknowledges that section 490.715.5(2)(a) allows the trial court to consider the medical bills "incurred" by a party in determining the value of the medical services rendered, but he argues that the phrase "medical bills incurred" refers to only those amounts actually paid for the services rendered, not the amounts billed.

The interpretation of a statute is a question of law that we review *de novo. Nelson v. Crane*, 187 S.W.3d 868, 869 (Mo. banc 2006). "The primary rule in statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *Id.* When the language used is clear and unambiguous, we give effect to the language as written, and we do not engage in statutory construction. *Shipman v. DNS Electronic Materials, Inc.*, 267 S.W.3d 751, 758 (Mo.App. 2008). To determine the intent and meaning of a statute, we give meaning and effect to each word, clause, sentence, and section of a statute. *Neske v. City of St. Louis*, 218 S.W.3d 417, 424, 426 (Mo. banc 2007). We do not read any part of a statute in isolation, but read each part in the context of the entire statute, and we harmonize all provisions. *Id.* at 424, 426; *Edwards v. Hyundai Motor America*, 163 S.W.3d 494, 497 (Mo.App.2005). We assume that the legislature does not enact meaningless provisions. *Edwards v. Gerstein*, 237 S.W.3d 580, 581 (Mo. banc 2007); *Hyundai Motor*, 163 S.W.3d at 499. We interpret a statute in a manner to avoid unjust and absurd results. *Neske*, 218 S.W.3d at 424. When the legislature uses different statutory terms in different subsections of a statute, we presume that the legislature intended the terms to have different meaning and effect. *Nelson*, 187 S.W.3d at 870. We also presume that the legislature does not insert idle words or superfluous language into a statute. *Hyundai Motor*, 163 S.W.3d at 497. When a word used in a statute is not defined, we may use the meaning found in a dictionary. *Gash v. Lafayette County*, 245 S.W.3d 229, 232 (Mo. banc 2008). *See also Cook Tractor Co. v. Director of Revenue*, 187 S.W.3d 870, 873 (Mo. banc 2006). When the legislature enacts a statute using a term that has been given a specific meaning in prior court decisions, we presume the legislature acted with knowledge of that prior judicial action. *Cook Tractor*, 187 S.W.3d at 873; *State ex rel. Nixon v. Smith*, 280 S.W.3d 761, 767 (Mo.App.2009).

Section 490.715.5(1) allows any party to introduce evidence of the value of the medical treatment rendered to a party that was reasonable, necessary, and a proximate result of the negligence of any party. Section 490.715.5(2) creates a "rebuttable presumption" that "the dollar amount necessary to satisfy the financial obligation to the health care provider" represents the value of the medical treatment rendered. However, section 490.715.5(2) also allows the trial court, upon the motion of any party, to determine the value of the medical treatment "based upon additional evi-

dence, including but not limited to" "[t]he medical bills incurred by a party." Section 490.715.5(2)(a).

■ A "rebuttable presumption" puts the burden of producing some substantial evidence on the party presumed against; but when substantial evidence is introduced, the presumption disappears, and the fact finder determines the issue by considering that evidence as well as the evidence that gave rise to the presumption. *Terminal Warehouses of St. Joseph, Inc. v. Reiners,* 371 S.W.2d 311, 316–17 (Mo. 1963); *Michler v. Krey Packing Co.,* 363 Mo. 707, 253 S.W.2d 136, 140 (1952); *Insurance Placements, Inc. v. Utica Mut. Ins. Co.,* 917 S.W.2d 592, 595 (Mo.App. 1996); *United Missouri Bank of Kansas City v. March,* 650 S.W.2d 678, 680–81 (Mo.App.1983); *Simpson v. Blackburn,* 414 S.W.2d 795, 801 (Mo.App.1967). *See also* Black's Law Dictionary 1205 (7th Ed.1999). The court in *Michler* explained, "In other words, such presumptions are procedural (placing the burden upon the party denying their truth to produce evidence) and not for consideration of the triers of the facts who have the function of determining what facts are proved by the evidence produced." 253 S.W.2d at 140.

Thus, the presumption of value found in section 490.715.5 can be rebutted by substantial evidence establishing a different value. The "additional evidence" a court may hear includes, but is not limited to, the "medical bills incurred by a party." Section 490.715.5(2)(a).

Defendant's argument that the court may only consider the medical bills "incurred" to the extent of the dollar amount paid has no merit. In the first place, Missouri courts have not given the word "incurred" this meaning. Rather, our courts have consistently distinguished amounts "incurred" from amounts "paid." *See Litton v. Kornbrust,* 85 S.W.3d 110,

115 (Mo.App.2002); *Burwick v. Wood,* 959 S.W.2d 951, 952 (Mo.App.1998); *Next Day Motor Freight, Inc. v. Hirst,* 950 S.W.2d 676, 680 (Mo.App.1997). *Litton* and *Burwick* construed the word "incurred" as used in section 492.590.1 RSMo (2000), governing taxation of deposition expenses as costs, to mean "to become liable for." *Litton,* 85 S.W.3d at 115; *Burwick,* 959 S.W.2d at 952. In *Burwick,* the court rejected the argument that a party had not "incurred" deposition costs because they were paid by an insurer. 959 S.W.2d at 952. In *Litton,* the court, relying on *Burwick,* rejected the argument that a deceased party for whom no estate had been opened had not "incurred" deposition expenses, even though those costs were incurred after the party's death and had been paid by the decedent's insurer. 85 S.W.3d at 115–17.

In *Next Day,* we were confronted with the meaning of "incurred" in the context of determining the reasonableness of an award of attorney's fees to the plaintiff corporation. Plaintiff's president had testified he had "incurred" $20,000 in attorney's fees to collect a very small judgment, but he had not testified he had paid them. We held:

> "Incur" is "become liable or subject to". It is a synonym of "accrue". Webster's Third New International Dictionary 1146 (1981). Accruing or incurring attorneys' fees is not the same as paying.

950 S.W.2d at 680. We found that the lack of evidence of payment of attorney's fees was significant in determining the $20,000 amount awarded for attorney's fees was unreasonable. *Id.*

Defendant's interpretation of "incurred" in subsection (a) of section 490.715.2 as the amount "paid" is not only inconsistent with the prior definition given to "incurred" by our courts, but also this interpretation

would make subsection (b) of section 490.715.2, which specifically allows evidence of the amount actually paid for medical treatment, superfluous. We presume that by listing these two categories of evidence separately, the legislature intended that they have different meanings. *Nelson*, 187 S.W.3d at 870.

The trial court did not misapply section 490.715.5 when it considered the amount reflected in plaintiff's billing statements in determining the reasonable value of plaintiff's medical treatment. Point two is denied.

### III. *Submissible Case*

■ For his third point, defendant contends that the trial court erred in failing to direct a verdict in his favor and in denying his motion for judgment notwithstanding the verdict because plaintiff's evidence was insufficient to show defendant was negligent.[2] He relies on plaintiff's failure to remember "anything prior to the impact," plaintiff's failure to present expert testimony on defendant's reaction time, and his own expert's testimony that he did not have enough time to react.

The same standard of review governs the denial of a motion for directed verdict and the denial of a motion for judgment notwithstanding the verdict. *Savory v. Hensick*, 143 S.W.3d 712, 716 (Mo.App. 2004). The principal question on review is whether the plaintiff made a submissible case, which is a question of law that we review *de novo. Id.* When we determine whether a plaintiff has made a submissible case, we view the evidence and all reasonable inferences that may be drawn therefrom in the light most favorable to the prevailing party, and we disregard all evidence and inferences to the contrary. *Id.* We will not overturn a jury verdict for insufficient evidence unless there is a complete absence of probative facts to support the jury's verdict. *Id.*

This case was submitted to the jury on the alternative theories of failure to keep a proper lookout and failure to act after the danger of a collision became apparent.[3] Although these are separate submissions that were submitted in the alternative, they are not mutually exclusive. *See Morgan v. Toomey*, 719 S.W.2d 129, 135 n. 1 (Mo.App.1986).

■ "The obligation of a driver to maintain a careful lookout imposes the 'continuous and inescapable duty to maintain a vigilant lookout ahead and laterally ... in such observant manner as to enable him to see what one in the exercise of the highest degree of care for the safety of himself and others could and should have seen under similar circumstances.'" *Foster v. Farmers Ins. Co., Inc.*, 775 S.W.2d 143, 144 (Mo. banc 1989) (quoting *Graham v. Conner*, 412 S.W.2d 193, 200–01 (Mo. App.1967)). A driver is held to have seen what looking would have revealed. *Zempel v. Slater*, 182 S.W.3d 609, 620 (Mo.App. 2005). A driver's obligation to maintain a careful lookout extends to a pedestrian regardless of whether he or she is standing on the shoulder or on the traveled part of the roadway. *Foster*, 775 S.W.2d at 144.

■ For failure to keep a careful lookout to be submissible, there must also be substantial evidence of causation. *Hitt v. Martin*, 872 S.W.2d 121, 122 (Mo.App. 1994).

---

**2.** Defendant also challenges the trial court's denial of his motion for new trial. The denial of a motion for new trial is not an appealable order; the appeal must be taken from the judgment to which the motion was directed.

**3.** The specific actions submitted were failure to stop, swerve, or slacken speed and swerve.

*Marshall v. Bobbitt*, 482 S.W.2d 439, 442 (Mo.1972). Failure to keep a careful lookout is the proximate cause of a collision if the driver of the colliding vehicle, exercising the highest degree of care, could have seen the other vehicle or pedestrian in time to have taken effective precautionary measures to avoid the accident. *Id.* In other words, there must be evidence that the operator of the vehicle could have avoided the collision if a careful lookout had been maintained. *Id.*; *Foster*, 775 S.W.2d at 144–45; *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo.App.1978). "In the 'lookout' instruction, the time, distance[,] means[,] and ability to take effective precautionary action are not expressed but are submitted implicitly." *Morgan*, 719 S.W.2d at 133. "Thus, to submit the 'lookout' instruction, it is said, the plaintiff must still show that the defendant knew or should have known the potential danger could occur and the plaintiff also must show the defendant had time thereafter to take effective precautionary action." *Id.* "Normally a plaintiff must establish the time when and the distance at which the potential danger of collision triggered the defendant's specific duty to take effective precautionary action." *Zempel*, 182 S.W.3d at 620.

 The case was also submitted on failure to act after the danger of collision became apparent. "A motorist has a duty to stop, swerve, slacken speed or sound a warning when he or she knows or by the exercise of the highest degree of care could have known that there was a reasonable likelihood of collision in sufficient time to take such preventive measures." *McHaffie v. Bunch*, 891 S.W.2d 822, 828 (Mo. banc 1995). A plaintiff must show by substantial evidence when the defendant knew or should have known that there was a reasonable likelihood of a collision and that the defendant had the time thereafter to take effective precautionary action. *Morgan*, 719 S.W.2d at 133. This theory may be submitted only where there is evidence that the driver had sufficient time, distance, means, and ability, considering the movement and speeds of the vehicles, to stop, swerve, or slacken speed to avoid the collision but failed to do so. *Frazier v. Emerson Elec. Co.*, 867 S.W.2d 700, 702 (Mo.App.1993); *Knox v. Simmons*, 838 S.W.2d 21, 25 (Mo.App.1992).

 There was sufficient evidence to make a submissible case on both theories. Defendant first challenges the sufficiency of the evidence on his failure to see plaintiff in time to have avoided the collision. He refers to plaintiff's testimony to the effect that he did not "remember" "anything" and specifically did not remember the existence of certain specific details prior to the collision.

This argument has no merit. In the first place, it is not supported by the record. Although plaintiff did not remember whether some specific circumstances existed immediately prior to the collision, plaintiff did testify to the conditions of the road, the illumination from street lights, the lack of obstructions to view, the location where he had parked, the path of his walk, his pace, the number of lanes he crossed, and the location where he was hit. In addition, there was substantial evidence that defendant had an unobstructed view of the street where plaintiff was crossing at that time. Further, defendant testified that he did not have any problems driving at night, that his headlights were illuminated, and that there was nothing in front of him that was blocking his view of the street. Defendant's expert testified that low-beam headlights would illuminate a "couple of hundred" feet. Defendant testified that he did not see plaintiff until plaintiff's face struck defendant's windshield. This was

sufficient evidence for submission of the element of defendant's failure to see.

■■■ The next issue is whether there was sufficient evidence that defendant had enough time, distance, means, and ability to take preventative action to submit the causation element of failure to keep a careful lookout and to submit failure to act. Defendant argues that the evidence was insufficient because defendant's expert witness testified that defendant could not have perceived plaintiff in the street and reacted fast enough to avoid striking plaintiff, and because plaintiff did not offer contrary expert evidence.

■■■ Defendant's expert's conclusion that defendant could not have reacted fast enough to avoid striking plaintiff was based on his conclusion that a "normal" person had a 1 1/2 second daytime reaction time that would increase to 3 1/2 seconds for an older person at night. As we have previously stated, we disregard all evidence contrary to the prevailing party in determining whether a plaintiff made a submissible case. The jury was free to disbelieve defendant's expert's testimony. *Harper v. NAMCO, Inc.,* 765 S.W.2d 634, 639 (Mo.App.1989). *See also Friend v. Yokohama Tire Corp.,* 904 S.W.2d 575, 576 (Mo.App.1995). The jury was not bound by defendant's expert's testimony on reaction time.

■■■ In addition, plaintiff's failure to call an expert to testify to defendant's reaction time does not affect the submissibility of his case. A plaintiff is not necessarily required to present expert testimony showing a driver's reaction time. *See DeLay v. Ward,* 364 Mo. 431, 262 S.W.2d 628, 633–36 (1953); *Peterson v. Tiona,* 292 S.W.2d 581, 583 (Mo.1956). The court may take judicial notice of and use a 3/4 second reaction time. *DeLay,* 262 S.W.2d at 635; *Peterson,* 292 S.W.2d at 583.

In this case, the trial court took judicial notice that a driver's reaction time was 3/4 second and of the formula that a car traveling 1 m.p.h. travels 1.5 feet per second. Our courts have consistently used and approved this reaction time and this formula. *See DeLay,* 262 S.W.2d at 635; *Peterson,* 292 S.W.2d at 583; *Zempel,* 182 S.W.3d at 621; *Knox,* 838 S.W.2d at 25; *Smiley v. Farmers Ins. Co., Inc.,* 749 S.W.2d 711, 717–13 (Mo.App.1988); *Morgan,* 719 S.W.2d at 137. As demonstrated below, the application of the judicially-noticed reaction time and formula to the facts in evidence was sufficient to establish that defendant had the time and distance to avoid the accident.

Defendant's expert testified that the maximum distance at which plaintiff was visible to defendant was 150 feet if he was wearing light colored clothing, and 100 feet if he was wearing dark clothing. Defendant's expert calculated that at the rate of 1.5 feet for every 1 m.p.h., a car traveling 25 m.p.h. travels 36 2/3 feet per second; a car traveling 30 miles m.p.h. travels 44 feet per second. Given a normal reaction time of 3/4 second, defendant would have traveled 27.5 feet if he was moving at 25 m.p.h. or 33 feet if he was moving at 30 m.p.h. before he could have reacted to seeing plaintiff in the road. Thus, if defendant was 150 feet away at the time he should have seen plaintiff, he had 132.5 to 127 feet remaining, after deducting for reaction time and distance, in which to stop, swerve, or slacken speed. If defendant was 100 feet away, he had 72.5 to 67 feet remaining in which to take precautionary measures.

Moreover, defendant testified he stopped within a few feet when he did apply the brakes. Evidence that defendant's car actually stopped, including reaction time, within a "few" feet was substantial evidence from which the jury could

infer that the condition of the automobile and its brakes was such that, at the rate of speed defendant was going, he could stop within a "few" feet. *DeLay,* 262 S.W.2d at 634. This was also substantial evidence that defendant could have stopped the car within less than 100 feet. *Peterson,* 292 S.W.2d at 583–84. A car may be swerved or slowed in the same time required to stop. *Frazier,* 867 S.W.2d at 702; *Smiley,* 749 S.W.2d at 713. Under this evidence defendant would also have had time to swerve, or to slacken speed and swerve. *See Knox,* 838 S.W.2d at 25.

There was sufficient evidence from which the jury could reasonably determine that defendant had sufficient time, distance, means, and ability at the point he should have seen plaintiff crossing the street to avoid hitting plaintiff to submit that element in the failure to keep a careful lookout instruction and the failure to act instruction. *See Knox,* 838 S.W.2d at 25; *Smiley,* 749 S.W.2d at 713. Plaintiff was not required to present expert testimony about defendant's reaction time, and the jury was not required to believe defendant's expert's testimony on reaction time.

The trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict. Point three is denied.

## IV. *Voir Dire*

In his fourth point, defendant maintains that the trial court erred in allowing plaintiff's counsel to ask the venire panel whether it could make a significant award of damages. He contends that such a question "had a tendency" to pledge the jury to a certain verdict, and that the jury subsequently returned a verdict for a significant amount of damages which, he posits, was not supported by the evidence.

During voir dire, plaintiff's attorney asked the venire panel:

Folks, I want to briefly revisit the damages, some brief questions. I hope I get good responses from you on this. There's significant injuries in this case, I think that will be proven, and there's some ongoing problems and if we prove these injuries, prove these ongoing problems, prove the bills and the other things, then at the end of this case we're going to ask you for significant amount of damages.

Now, some people just are of the opinion that they cannot award a large amount of money as damages in any kind of case, including injury cases. And what I want to know is do any of you in here have a limit in your own mind that well, I probably couldn't go higher than this figure, I couldn't go higher than that figure, I couldn't go more than this or more than that, as you sit here now do you have any thoughts in that regard?

I realize you haven't heard the evidence. Is there some amount you think, and I know you're hearing this in the abstract, is there some amount you think, boy, that just would be too large, I don't care what the evidence is?

At that point, plaintiff's counsel questioned an individual venireperson about his ability to award damages for pain and suffering and ongoing problems. As counsel began to question a second venireperson, defendant's attorney asked to approach the bench, where he argued that plaintiff's counsel "was getting into the realm of damages asking the jury to promise to award certain amounts for damages." Plaintiff's counsel responded:

[PLAINTIFF'S COUNSEL]: I'm just asking them to confirm that they can follow the instructions which are that these are items of damages and I'm not asking them to commit to any

amount or number or anything like that and everything is conditioned on it proven.

Defense counsel responded:

[DEFENSE COUNSEL]: And what I would say is, you know, can you follow the instructions regarding damages rather than saying I can award an amount or I can award, you know, the amount was too big.

The trial court allowed plaintiff's counsel to ask if the jurors had some artificial limit on damages but told him he could not get into the facts of the case. Defense counsel did not object to or register any disagreement with the court's direction. Plaintiff's counsel continued questioning, and defense counsel did not make an objection to any further questions on this topic. Plaintiff's counsel never asked the jury whether it could award a "significant amount of damages," and the court never stated it would permit that question. Rather, the court merely allowed plaintiff's counsel to ask if any jurors had a preset limit on the amount of damages he or she would award; plaintiff's counsel asked this question; and defendant did not object to it.

Defendant's claim of error is addressed to a hypothetical situation that never happened at trial and to which no objection was made. It was therefore not preserved. Further, there was no plain error in the question allowed by the court as it did not commit or pledge the jury to a certain verdict or amount of changes. *Compare Wright v. Chicago, Burlington & Quincy Railroad Co.*, 392 S.W.2d 401, 408 (Mo.1965) (in which the question did commit the jury to a specific amount). Point four is denied.

## V. *Instruction—Driver's Duty of Care*

█ For his final point, defendant asserts that the trial court erred in submitting plaintiff's non-MAI jury instruction, Instruction 9, on a driver's duty of care. He contends that the instruction was merely an abstract statement of law, was misleading and confusing, and was argumentative.

█ In order to assign as error the giving or failure to give an instruction, a party " 'must make *specific* objections to the giving or failure to give instructions before the jury retires to consider its verdict; the objections and grounds therefore must be stated *distinctly* on the record, and the objections must also be raised in the motion for new trial.' " *Sparkman v. Columbia Mut. Ins. Co.*, 271 S.W.3d 619, 624 (Mo.App.2008) (emphasis in original) (quoting *Doe v. McFarlane*, 207 S.W.3d 52, 74 n. 12 (Mo.App.2006)). Rule 70.03 specifically provides:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Counsel need not repeat objections already made on the record prior to delivery of the instructions. The objections must also be raised in the motion for new trial in accordance with Rule 78.07.

A vague, general objection preserves nothing for review because it does not allow the trial court to make an informed ruling on the validity of the objection. *Sparkman*, 271 S.W.3d at 624. "The trial court has no obligation to ferret out specificity, which a party chooses not to distinctly articulate in its objection, in order to make an informed ruling on a general objection." *Id.* at 625.

█ In order to preserve an objection to a jury instruction for appellate review, a party must also set forth the

same objection in his or her motion for new trial and in his or her point on appeal. *See Andersen v. Boggs,* 219 S.W.3d 818, 819 (Mo.App.2007); *Khan v. Gutsgell,* 55 S.W.3d 440, 442 (Mo.App.2001). A point on appeal may not "enlarge or change the objection made at trial." *Goralnik v. United Fire and Cas. Co.,* 240 S.W.3d 203, 210 (Mo.App.2007). When the point on appeal contends that an instruction is erroneous on a different ground than was asserted in the objection made at trial, we may not review that error on appeal. *Id.* (citing *Seidel v. Gordon A. Gundaker Real Estate Co.,* 904 S.W.2d 357, 364 (Mo.App. 1995)). *See also Hatch v. V.P. Fair Foundation, Inc.,* 990 S.W.2d 126, 140 (Mo.App. 1999).

During the instruction conference, defendant objected to Instruction 9, stating: "I object to Instruction 9. I don't think that there has really been given any evidence on this point and I think it might confuse the jury. It's not an MAI. I don't think it's supported by any case law." In his motion for new trial, defendant asserted that the instruction was improper because it was an abstract statement of law; the necessity of a not-in-MAI instruction was not demonstrated; it was confusing because it referred to a "child or any confused or incapacitated person," which the case did not involve; and it was argumentative because it began with the phrase, "Notwithstanding the duties of a pedestrian...." In his point relied on, defendant asserts that the instruction was erroneous as an abstract statement of law and was misleading, confusing, argumentative, and biased.

The only objection made at trial, reasserted in the motion for new trial, and reasserted in the point relied on was that the instruction was confusing. Accordingly, this is the only claim that we may consider on review. However, this objec-

tion was not preserved at trial or on appeal for other reasons. Defendant's trial objection that the instruction "might confuse the jury" was not specific as required by Rule 70.03, and therefore, it did not preserve error for this reason. *See Sparkman,* 271 S.W.3d at 624; *Doe,* 207 S.W.3d at 74 n. 12. In *Coogan v. Nighthawk Freight Service, Inc.,* 193 S.W.2d 388, 390 (Mo.App.1946), we held that under prior procedural statutes requiring an objection to an instruction to state the grounds therefor, an objection to an instruction as confusing must explain why counsel believed the instruction to be misleading:

> [I]f plaintiff thought the instruction in this case was wanting in clarity and might be misunderstood so that the jury would be mislead to his prejudice, he should have objected to the instruction on that ground at the time it was tendered, pointing out wherein he regarded the instruction as misleading.

*Id.* at 390. Had defense counsel explained why she thought the instruction was confusing, specifically if defense counsel had explained that it was because of the language included in the instruction referring to children and incapacitated persons, the court could have made an intelligent ruling on the objection and considered deleting or modifying this language before the instruction was submitted to the jury. *See Sparkman,* 271 S.W.3d at 624–25.

In addition, defendant's point relied on does not explain in summary fashion why, in the context of this case, this instruction was confusing. This violation of Rule 84.04(d)(1)(c) constitutes a separate failure to preserve error for review in this case.

 Even if we consider defendant's reason for his claim of confusion, which appears only in his motion for new trial and in the body of his argument, defendant has not shown prejudicial error. We assume that jury instructions are given

to and contemplated by jurors of reasonable intelligence. *Smith v. American Bank & Trust Co.*, 639 S.W.2d 169, 175–76 (Mo.App.1982). This case did not involve a child or an incapacitated person; therefore, the language explaining a driver's duty to a child or incapacitated person was mere surplusage, which a reasonable juror would ignore. *See Pickel v. Gaskin*, 202 S.W.3d 630, 637 (Mo.App.2006). *See also Smith*, 639 S.W.2d at 175. The inclusion of superfluous language in the instruction referring to a duty to children and incapacitated persons did not prejudice defendant.

For all of the above reasons, point five is denied.

*Conclusion*

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, J. and NANNETTE A. BAKER, J., concur.